PIER CONNECTION, INC. and
Pier Sales Corp., Plaintiffs,

v.

Narendra V. LAKHANI, a/k/a Norman Lakhani Enterprises, Inc., Neutral, Inc., Deccan Enterprises USA, Inc., Deccan Enterprises, Deccan Overseas Export (Pvt.) Ltd., Thirupura Exports, Deccan Designs, Deccan Creations, Deccan Apparels, Deccan International, Deccan Fashions, Boncomm, Krishnamoorthy, Charles H. Ross, Jr., a/k/a Hank Ross, Nancy J. Madden, Anita Friedman, Ozvaldo A. Mojica, and Jacqueline Green, Defendants.

No. 95 Civ. 3746 (SAS).

United States District Court,
S.D. New York.

Sept. 28, 1995.

Daniel J. Cooper, Moskowitz Altman & Hughes L.L.P., New York City, for Plaintiffs, Pier Connection, Inc. and Pier Sales.

Craig P. Murphy, Windels, Marx, Davies & Ives, New York City, for Defendants Narendra V. Lakhani, a/k/a Norman Lakhani Enterprises, Inc., Neutral, Inc., Deccan Enterprises USA, Inc., Deccan Enterprises, Deccan Overseas Export (Pvt.) Ltd., Thirupura Exports, Deccan Designs, Deccan Creations, Deccan Apparels, Deccan International, Deccan Fashions, Boncomm, Krishnamoorthy, Charles H. Ross, Jr., a/k/a Hank Ross, Nancy J. Madden, Anita Friedman, Ozvaldo A. Mojica, and Jacqueline Green.

## OPINION

SCHEINDLIN, District Judge.

### I. *Introduction*

Plaintiffs Pier Connection, Inc. and Pier Sales Corporation (together, "Pier Connection") filed suit against the Defendants in the Supreme Court of New York, New York County in June 1994. Pier Connection filed an amended complaint (the "Complaint") on April 12, 1995, alleging two violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, as well as numerous pendent state law claims. With the addition of the RICO claims, Defendants removed the action to federal court on May 23, 1995. The two RICO claims comprise alleged violations of § 1962(c) (conducting the affairs of an enterprise through a pattern of racketeering activ-

ity) and of § 1962(d) (conspiring to commit RICO violations). Defendants have moved to dismiss the two RICO counts of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).[1]

## II. *Facts* [2]

 In considering a motion to dismiss, the court must presume all factual allegations in the complaint to be true. *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994). Moreover, the court must draw all reasonable inferences in favor of the non-moving party. *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Only if "it appears beyond doubt that the plaintiffs can prove no set of facts in support of [the] claim which would entitle [them] to relief" should the court grant a motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The relevant facts as alleged by Plaintiffs are as follows.

Pier Connection designs, contracts for the manufacture of, imports and sells clothing. Complaint ¶ 17.[3] Its products are manufactured in India and sold to retailers throughout the United States. *Id.* ¶ 1.

Defendant Norman Lakhani was one of four stockholders who owned the plaintiff corporations from 1987 to 1989. Complaint ¶¶ 21, 23. In 1989, Lakhani redeemed his shares and resigned from Plaintiffs' boards of directors. However, he continued to work for the companies and to earn more than $500,000 per year from Pier Connection. *Id.* ¶¶ 24, 26, 27. From 1987 to 1993, Lakhani was the chief financial officer of Pier Connection. In this capacity, he was primarily responsible for "all financial, banking, credit and administrative decisions." *Id.* ¶ 28. Lakhani had the exclusive authority to enter into financial agreements with Pier Connection's financial backers on behalf of Pier Connection. In addition, Lakhani maintained

Pier Connection's financial relationship with the Deccan Companies (Plaintiffs' primary manufacturer from 1978 through March 1994) and with the United Jersey Bank (Pier Connection's former trade bank). *Id.* ¶¶ 19, 28.

After working with others to build Pier Connection, Lakhani then "sought to seize control of [Pier Connection's] business." Complaint ¶ 1. His goal was to take Plaintiffs' assets and divert them to another company owned exclusively by the individual Defendants. *Id.* ¶ 65. Lakhani's plan involved "assembl[ing] a team of manufacturers, marketers and designers to recreate the company." *Id.* ¶ 1. This team comprised the remaining Defendants: account executives of Pier Connection (Madden, Friedman and Green), the manufacturer for Pier Connection (the Deccan Companies), the owner of the Deccan Companies (Krishnamoorthy), a Vice President of Merchandising of Pier Connection (Ross), and a designer for Pier Connection (Mojica). RICO Statement at 3–6.[4] Lakhani is now a financial advisor and guarantor of Defendant Neutral, Inc. ("Neutral"). *Id.* at 3. Neutral is the corporation that Plaintiffs allege was formed specifically to misappropriate the assets of and compete unlawfully with Pier Connection. *Id.* at 4.

Plaintiffs describe several ways in which Lakhani and the other Defendants implemented his plan. First, Defendants stripped Pier Connection of its production capabilities by causing the Deccan companies not to ship goods to Pier Connection while sending false telexes stating that the goods would be shipped. *Id.* at 8–9. Second, Defendants "sabotaged [Pier Connection's] revenues and customer relationships by repeatedly shipping only partial orders of goods to Plaintiffs" while representing falsely via telexes

---

**1.** Defendants also sought dismissal of the RICO claims for failure to plead the claims with particularity as required by Fed.R.Civ.P. 9(b). Dismissal on that ground was denied at oral argument on September 18, 1995. *See* Transcript of Oral Argument on Motion to Dismiss ("Tr."), *Pier Connection v. Lakhani,* 95 Civ. 3746, Sept. 18, 1995, at 27.

**2.** All of the facts are drawn from the Amended Complaint and the Plaintiffs' RICO Statement.

**3.** At oral argument, Pier Connection maintained that it is currently "virtually nonoperational." Tr. at 10. Nonetheless, I will refer to Pier Connection in the present tense.

**4.** For purposes of this motion, the factual allegations contained within Plaintiffs' RICO Statement, filed on June 22, 1995, are deemed to be incorporated into the Complaint.

that Plaintiffs' entire orders would be shipped, and by shipping goods to Plaintiffs by one method while representing falsely via telexes that the goods would be shipped by another method. *Id.* at 14, 17. Moreover, through telephone conversations with a bank representative, Lakhani convinced United Jersey Bank that Pier Connection was a high default risk and that the bank should terminate Pier Connection's line of credit. *Id.* at 20. Plaintiffs further allege that the individual Defendants, via telephone, defamed Pier Connection to its customers and solicited Pier Connection's customers on behalf of Neutral while the Defendants were still employed by Pier Connection. *Id.* at 21, 23.

Plaintiffs contend that the foregoing actions constitute wire fraud under 18 U.S.C. § 1343, which prohibits the use of interstate wires in furtherance of a scheme to defraud. Under 18 U.S.C. § 1961(1)(A), the substantive crime of wire fraud constitutes a RICO predicate act. The above-described actions of Defendants form the basis of Plaintiffs' RICO claims. RICO Statement at 27.

### III. *Plaintiffs' Pleading Burden*

To state a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege injury resulting from "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d Cir.1994). In clarifying the requirement that the RICO allegations must constitute a pattern, the statute defines only a minimum: a complaint must set forth two predicate acts that occurred within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court has further explained that the two-act minimum represents, at best, a broad outer limit on what may constitute a pattern. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). The legislative history of RICO reveals that Congress did not intend that " 'proof of two acts of racketeering activity, without more,' " would establish a pattern. *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2900 (citation omitted). Rather, the numerical minimum "assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." *Id.* at 238, 109 S.Ct. at 2900 (emphasis in original). According to the Court, Congress intended plaintiffs to prove a pattern of racketeering activity by "show[ing] that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.* at 239, 109 S.Ct. at 2900.

Thus the pattern element of a RICO claim consists of two prongs: relatedness and continuity. Defendants do not contest that the predicate acts alleged by Plaintiffs are related; they argue only that Plaintiffs have failed adequately to plead the required continuity. *See* Defendants' Memorandum of Law in Support of Motion to Dismiss at 15.

### IV. *Discussion*

■ The Supreme Court has defined two types of continuity. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902. "In determining whether continuity exists the court should not limit its consideration to the duration of the scheme, but should also look at the 'overall context in which the acts took place.' " *Deem v. Lockheed Corp.,* No. 87–7017, 1991 WL 196171, at *9 (S.D.N.Y. Sept. 25, 1991) (quoting *United States v. Kaplan,* 886 F.2d 536, 542 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990)).

#### A. *Open-ended continuity*

■ Plaintiffs argue that the fraudulent scheme alleged in the Complaint threatens to continue in the future. In support, Pier Connection points to ¶¶ 237–239 of the Complaint, in which it alleges that the "racketeering activity constitutes an ongoing pattern" and that the "scheme commenced on March 7, 1993, if not earlier, and continues to date." According to the Supreme Court, open-ended continuity exists where "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," or "where it is shown that the predi-

cates are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.,* 492 U.S. at 242–43, 109 S.Ct. at 2902–03. For several reasons, Pier Connection has failed to make the requisite showing.

First, Plaintiffs cannot establish open-ended continuity by alleging that the *effects* of predicate acts extend into the future. Rather, there must be a threat that the acts themselves will be repeated. "Past criminal conduct must give an indication of future or continuing criminal conduct, not future repercussions." *Rini v. Zwirn,* 886 F.Supp. 270, 300 (E.D.N.Y.1995). In *Rini,* former town employees whose jobs were eliminated sued the town and various former town officials, alleging violations of federal civil rights statutes, RICO violations, and common law fraud. To support their RICO claims (based on predicate acts of mail fraud, wire fraud, conspiracy and extortion), the plaintiffs argued that the defendants' scheme "continue[d] to cause many employees of the Town to disavow affiliation with" a certain political party. The court found these continuing effects irrelevant to the plaintiffs' task of establishing continuity. Absent allegations that any future predicate acts were likely to occur, the plaintiffs had not adequately alleged open-ended continuity. The court therefore dismissed the plaintiffs' RICO claims. *Id. See also Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 275 n. 10 (S.D.N.Y.1988) (rejecting argument that the "continuing effect of [a] fraud … renders the enterprise ongoing" and stating that the critical factor in determining whether an enterprise is continuing is "the terminal quality of the [enterprise's] goal, not of its effects").

In essence, Pier Connection argues that Defendants would continue to reap the benefits of having defamed Plaintiffs, and of having solicited Plaintiffs' customers for Neutral while still employed by Plaintiffs. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Mem.") at 20–21. But continuing to reap

such benefits is not itself a predicate act; it is only an effect of the alleged acts of wire fraud.

Second, Pier Connection has not adequately established open-ended continuity because it has not alleged a threat that the predicate acts will be repeated. A simple statement that the "scheme continues to date," Complaint ¶ 238, without more, does not suffice.[5] For example, in *Thai Airways Int'l Ltd. v. United Aviation Leasing B.V.,* 891 F.Supp. 113, 119 (S.D.N.Y.1994), *aff'd,* 59 F.3d 20 (2d Cir.1995), an airline sued aircraft lessors under RICO. The plaintiff airline alleged that the lessors unlawfully converted security deposits proffered under airplane lease agreements and committed wire fraud by causing the plaintiff to transmit the security deposits. The court held that without an allegation that the defendants continued to convert funds, the "facts do not justify the inference that defendants' acts carry the threat of continuing into the future, or represent their ordinary way of doing business." *Thai Airways,* 891 F.Supp. at 119.

In *Ochs v. Shearson Lehman Hutton Inc.,* 768 F.Supp. 418 (S.D.N.Y.1991), plaintiffs asserted RICO claims based on predicate acts involving the allegedly fraudulent sale of limited partnership interests. In an attempt to demonstrate continuity, plaintiffs alleged that defendants were continuing to offer limited partnership investments to investors throughout the country. The court found such allegation insufficient to show open-ended continuity. "The most that can be said for this aspect of the pleading is that it alleges the defendants … are continuing to do business." *Id.,* 768 F.Supp. at 426. The court found "plaintiffs' concept of a 'threat of continuing racketeering activity' … far too conjectural to satisfy the requirements of RICO pleading. Something more concrete … is required." *Id.* Similarly, in the instant case, nothing Pier Connection has pled demonstrates a threat that Defendants' racketeering activity will continue.[6] *See also Po-*

---

**5.** Plaintiffs conceded at oral argument that "[p]erhaps today there is no continuing threat" from the scheme. Tr. at 21.

**6.** The *Ochs* court also noted that "if the corporate and individual defendants were associated with organized crime, [the] allegation[] [that defendants continue to do business] would be sufficient to plead open-ended continuity.… But

*lycast Technology Corp. v. Uniroyal, Inc.,* 792 F.Supp. 244, 267–68 (S.D.N.Y.1992) (finding no open-ended continuity based on an eight-month scheme in which defendants allegedly gave plaintiffs materially misleading information in connection with the sale of a subsidiary, where plaintiffs made no suggestion that defendants proposed further fraudulent sales, and where defendants had not formed a long-term association for the purpose of engaging in criminal activity).

Finally, Plaintiffs' claim of open-ended continuity fails because Pier Connection has alleged no facts that would allow the Court to infer that Defendants committed anything other than a single fraudulent scheme. "To infer a threat of repeated fraud from a single alleged scheme would in effect render the pattern requirement meaningless." *Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1455 (S.D.N.Y.1990). In *Continental Realty,* the plaintiff's allegations with respect to a failed real estate transaction supported an open-ended scheme on their face. However, the court refused to find open-ended continuity. The court noted that "nothing in the Defendants' actions suggest[ed] 'a distinct threat of long-term racketeering activity.'" *Id.* at 1455, citing *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. As in *Continental Realty,* the plaintiffs in the instant case have "fail[ed] to provide any factual support for [their] contention that [Defendants'] fraudulent activity will continue in the future." *Continental Realty,* 729 F.Supp. at 1455. *See also Deem v. Lockheed Corp.,* 1991 WL 196171, at *9 (S.D.N.Y. Sept. 25, 1991) (finding no threat of continuity "since there is no indication that defendants committed these same or similar acts before[,] or that they committed them after" completing the scheme against the plaintiffs).

### B. *Closed-ended continuity*

Plaintiffs also argue that they have pled closed-ended continuity sufficiently to form the basis of their RICO claims. Plaintiffs allege predicate acts beginning on June 4, 1993 and ending on March 25, 1994. RICO Statement at 8, 13. Thus, as Plaintiffs conceded at oral argument (*see* Tr. at 15), Defendants' scheme lasted no more than ten months.[7]

■ Closed-ended continuity may be demonstrated by showing a "series of related predicates extending over a substantial period of time." *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. The *H.J. Inc.* Court did not define "substantial," beyond stating that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* In working with the "few weeks or months" standard, the Second Circuit has contrasted racketeering activity that is inherently unlawful (such as murder, obstruction of justice, narcotics trafficking and embezzlement) with racketeering activity "in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property." *United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995). With respect to the latter, "the courts generally have found no threat of continuing criminal activity arising from conduct that extended over [periods] even longer" than a few weeks or months. *Id.*

■ In the instant case, there is no contention that Defendants engaged in racketeering activity that is inherently unlawful. Nonetheless, a ten-month span is not an insufficient length of time, as a matter of law, to constitute a closed-ended continuous pattern for RICO purposes. "[T]here is no bright line test for determining precisely what period of time is 'substantial' for purposes of finding the continuity necessary to establish a RICO pattern." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). To be sure, case law exists to support Plaintiffs' contention that ten months may be a sufficient period of time. *See, e.g., Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir.1994) (finding

defendants may not be so characterized." *Ochs,* 768 F.Supp. at 426. Here, too, Plaintiffs have made no allegation that Defendants are associated with organized crime.

7. In their Memorandum, Plaintiffs originally contended that the scheme lasted for at least seventeen months—beginning at the latest in March 1993 and continuing at least until July 1994. Plaintiffs' Mem. at 17; RICO Statement at 8.

that closed-ended continuity had been established by pleading that securities were sold in violation of securities laws several times within one year); *Farberware, Inc. v. Groben,* 764 F.Supp. 296, 306 (S.D.N.Y.1991) (stating that "the pleading of repeated similar acts over a ten-month period adequately alleges a continuing scheme to defraud plaintiff"). On the other hand, there are many cases holding that ten months is too short a period of time to constitute a pattern. *See, e.g., Continental Realty Corp. v. J.C. Penney Co.,* 729 F.Supp. 1452, 1454–55 (S.D.N.Y. 1990) (holding that several acts of mail and wire fraud committed during a period of more than one year "occurred over too short a time period to constitute" a closed-ended scheme); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 998 (E.D.N.Y.1995) (finding that allegations of wire and mail fraud lasting from 14–15 months did not constitute a pattern of criminal activity under RICO); *Mead v. Schaub,* 757 F.Supp. 319, 323 (S.D.N.Y.1991) (holding that an alleged scheme to defraud plaintiff did not meet the requirement of continuity even though it spanned a period of five years).

■ In any event, a scheme's duration alone is not dispositive. Rather, the court must examine the "overall context in which the acts took place." *United States v. Kaplan,* 886 F.2d at 542. This context includes the number of victims of the scheme and the number and extent of the perpetrators' goals. Numerous cases reveal that district courts in this Circuit, when deciding whether plaintiffs have pled a closed-ended continuous pattern under RICO, routinely consider such contextual issues as well as the duration of a scheme. *See, e.g., Mathon,* 875 F.Supp. at 998 (citing the limited goal and single victim of defendants' scheme, in addition to the scheme's limited duration, in deciding whether the acts complained of constitute a closed-ended pattern of criminal activity); *Zaloom v. Trupin,* No. 86–465, 1992 WL 279365

(S.D.N.Y. Sept. 30, 1992) (citing the existence of only one victim and one injury, along with the short duration of the alleged racketeering acts, in finding that plaintiff had failed to establish [closed-ended] continuity); *Mead,* 757 F.Supp. at 323 (citing defendants' single goal of depriving plaintiff of his client base); *Deem,* 1991 WL 196171 at *9–10 (finding no closed-ended continuity where all predicate acts were part of a single scheme with a limited nature—to deprive the plaintiff of a finder's fee); *Continental Realty,* 729 F.Supp. at 1455 (citing the limited nature of the perpetrators' goal and the presence of only one victim; holding that no closed-ended continuity exists).[8]

■ The above-described cases resemble the instant case in significant ways. As a single firm in the garment trade (Complaint ¶ 1), Plaintiffs are the sole victim of Defendants' scheme. Plaintiffs make no allegation, for example, that Defendants have pursued a similar scheme against other garment industry competitors. Further, despite Pier Connection's attempt to characterize Defendants' actions as a multi-faceted and complex scheme (Plaintiffs' Mem. at 20), the Complaint demonstrates that Defendants engaged in one scheme whose single goal was to seize control of Pier Connection's business. That Defendants used several different tactics to achieve this goal does not turn Defendants' scheme into one with multiple goals and/or victims, and does not mandate a finding of continuity sufficient to support a RICO claim. As in *Continental Realty,* all of Defendants' actions were directed toward a single goal. When considered together with the fact that Pier Connection alleges predicate acts spanning only ten months, the Complaint fails to allege closed-ended continuity. As the facts, taken as true, do not establish that Defendants engaged in a continuous pattern of racketeering activity, Plaintiffs' RICO claims must be dismissed.

8. For this reason, Plaintiffs' citation of *HMB Holding Co. v. Kaperst,* No. 90–2966, 1991 WL 87383, 1991 U.S.Dist. LEXIS 6796 (E.D.N.Y. May 21, 1991) does not help their case. While it is true that the *HMB* court found that closed-ended continuity existed, in that case "[t]he alleged acts had multiple victims involving multiple frauds and occurred over a two-year period."

*Id.* at *24–25. Similarly, *Hottinger v. Amcoal Energy Corp.,* No. 89–6391, 1994 WL 652499, U.S.Dist. LEXIS 16505 (S.D.N.Y. November 17, 1994) is inapposite because the plaintiff in that case alleged three related fraudulent schemes, the duration of which exceeded two years. *Id.* at *4.

## V. *Conclusion*

For the foregoing reasons, Defendants' motion to dismiss the RICO claims is granted. There is no purpose to granting leave to replead as Plaintiffs conceded that they cannot identify any predicate acts other than those already described in the Amended Complaint and RICO Statement. Tr. at 16. Accordingly, as there is no longer any basis for the exercise of federal jurisdiction, the case is remanded to the state court.

SO ORDERED.