Robert S. **FEIRSTEIN,** Michael A. Feirstein, and Ira D. Feirstein, as Trustees of the Edna Feirstein (CS) Trust, Michael A. Feirstein and Ira D. Feirstein, Individually, Michael A. Feirstein as Trustee under the Robert S. Feirstein Family Trust, Stephen Green and Stanley Green, as Trustees under the Last Will and Testament of Murray Green, deceased, and as Trustees under the Last Will and Testament of Dora Green, deceased, and Richard Richter, Individually and as Executor of the Estate of Sonya Richter, deceased, and Ruth Waters, Plaintiffs,

v.

**NANBAR REALTY CORP.,** Philrae Realty Corp., Philip Green, Howard Waxman, Eric Blum, and Blum, Tabrisky & Bernstein, Defendants.

No. 96 Civ. 0704(DAB).

United States District Court, S.D. New York.

April 24, 1997.

---

**6.** The bankruptcy stay began on February 10, 1989 and was lifted on August 19, 1996.

Carter, Ledyard & Milburn, New York City (William F. Sondericker, of counsel), for Plaintiffs.

Gordon, Altman, Butowsky, Weitzen, Shalov & Wein, New York City (Howard S. Koh Michael B. Reuben, of counsel), for Defendants Nanbar Realty Corp., Philrae Realty Corp., Philip Green, and Howard Waxman.

Bivona & Cohen, P.C., New York City (Henry D. Nelkin, of counsel), for Defendants Eric Blum and Blum, Tabrisky, and Bernstein.

*MEMORANDUM AND ORDER*

BATTS, District Judge.

Before the Court are the motions of Defendants Nanbar Realty Corp. ("Nanbar"), Philrae Realty Corp. ("Philrae"), Philip Green ("Green"), and Howard Waxman ("Waxman") (collectively the "Partner Defendants"), Eric Blum, and Blum, Tabrisky & Bernstein (collectively the "Accountant Defendants") to dismiss Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act claims, 18 U.S.C. § 1961 *et seq.* ("RICO"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay the action. For the following reasons, Defendants' motions to dismiss are GRANTED.

## I. BACKGROUND

Plaintiffs are partners, or the legal representatives of partners, of six New York real estate partnerships—Pater Realty Co. ("Pater"), Amon Realty Co. ("Amon"), Fogar Realty Co. ("Fogar"), 41 West 17th Street ("41 West"), Irbil Realty Co. ("Irbil"), and Parley Associates ("Parley") (collectively the "Partnerships"). (Compl.¶¶ 1–7.) The Partnerships own and operate commercial real estate in New York City. (Compl.¶ 8.) Defendants Nanbar and Philrae are New York corporations organized by Defendant Green, a former partner in all the Partnerships, except for Parley. (Compl.¶¶ 9, 12.) Defendant Waxman and Green were actively involved in the operation of Nanbar, Philrae and the Partnerships. (Compl.¶¶ 10, 13.) Defendant Eric Blum is a Certified Public Accountant, and a member of the Defendant accounting firm of Blum, Tabrisky & Bernstein, a New York partnership with offices in Tarrytown, New York. (Compl.¶¶ 14, 15.)

Plaintiffs allege that at some time between 1984 and 1990, Green, in furtherance of a scheme not to pay New York income and estate taxes, changed his residence to Florida but, in fact, continued to reside in New York for substantial periods each year, and to act as a partner in the Partnerships. (Compl.¶ 11.) Plaintiffs also claim that Green organized Nanbar and Philrae, the sole shareholders of which were his wife and/or his two daughters, Barbara Green and Nancy Green Waxman, and assigned Nanbar and Philrae his interest in the profits of the Partnerships (other than of Parley). (Compl.¶ 12.) Plaintiffs also claim that Green and Waxman dominated the financial affairs of the Partnerships. (Compl.¶¶ 16–17.)

Plaintiffs claim that the Accountant Defendants performed accounting and tax services for the Partner Defendants including the preparation of their personal income tax returns, (Compl.¶ 18), which services were paid by the Partnerships although the Accountant Defendants knew that Plaintiffs were also partners of the Partnerships. (Compl.¶ 20.) Furthermore, until approximately 1994, the Accountant Defendants, under the direction of the Partner Defendants, performed accounting and tax services for the Partnerships and prepared the tax returns for those entities, including New York City Unincorporated Business Tax ("UBT") returns for Pater and 41 West. (Compl.¶ 19.)

In order that Nanbar and Philrae avoid paying New York City corporate income taxes on income they derived from the Partnerships, Plaintiffs allege that Green, Waxman and the Accountant Defendants listed the corporate offices of Nanbar and Philrae with the Department of State at the same address as the Accountant Defendants' offices, outside of New York City, notwithstanding the fact that Nanbar and Philrae's only business was the receipt of income from activities of the Partnerships in New York City. (Compl.¶¶ 21, 22.)

Defendants deny Plaintiffs' allegations and now move to dismiss Plaintiffs' Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay the action. In addition, the Defendants argue that the Court should not grant Plaintiffs' request to amend the Complaint because it would be futile.

## II. DISCUSSION

Plaintiffs allege two RICO claims, found in the Fourth and Fifth Causes of Action, and three state law claims, found in the first three causes of action, against the Partner and Accountant Defendants.

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of N.Y.,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court will grant such a motion only if after viewing plaintiff's allegations in a most favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Walker v. City of N.Y.,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Accordingly, the factual allegations set forth and considered herein are presumed to be true for the purpose of deciding the motions to dismiss.

## A. RICO

The purpose of civil RICO liability does not include deterrence of all unlawful acts but only of those set out in Section 1961. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 232, 109 S.Ct. 2893, 2897, 106 L.Ed.2d 195 (1989); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21 (2d Cir. 1990); *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1001 (E.D.N.Y.1995). Furthermore, "alleged RICO violations must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations." *Mathon,* 875 F.Supp. at 1001.

To state a civil RICO cause of action, Plaintiffs must establish that the Defendants, conducted or participated in the conduct of an enterprise's affairs, through a pattern of racketeering activity, that caused injury to the Plaintiffs' business or property. *See* 18 U.S.C. § 1962(c);[1] *Sedima, S.P.R.L v. Im-*

*rex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *McLaughlin v. Anderson,* 962 F.2d 187, 190 (2d Cir.1992).

### 1. Accountant Defendants

#### a. Enterprise

Plaintiffs allege in their fourth cause of action that the Accountant Defendants charged the Partnerships for services rendered on behalf of the Partner Defendants and mailed statements for those services to the Partnerships on a monthly basis during the period of July 1992 through the end of 1994, and that Partner Defendants mailed back payments of those charges to the Accountant Defendants. Plaintiffs allege that the payments made by the Partner Defendants were taken from the Partnerships' funds and that each act of mailing constitutes a separate racketeering act of mail fraud. (Pls.' Mem. of Law at 13.)

The Complaint alleges Defendant Blum, Tabrisky & Bernstein is an enterprise. Accordingly, Defendant Blum, Tabrisky & Bernstein is dismissed. An enterprise and the persons conducting the affairs of an enterprise must be distinct. *See Discon, Inc. v. NYNEX Corp.,* 93 F.3d 1055, 1063 (2d Cir. 1996); *R.C.M. Executive Gallery Corp. v. Rols Capital Co.,* No. 93 Civ. 8571, 1997 WL 27059, at *7 (S.D.N.Y. Jan.23, 1997). A corporate entity, such as the accounting firm, cannot be both the person who conducts the affairs of the enterprise and the enterprise itself. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994); *R.C.M.,* 1997 WL 27059 at *7. A corporate entity can only form with others to compose an enterprise if it is sufficiently distinct. *Riverwoods,* 30 F.3d at 344; *R.C.M.,* 1997 WL 27059 at *7. This requirement may not be circumvented by alleging that the corporate entity's agents or employees and the corporate entity itself form the RICO enterprise that carries out its regular business. *Riverwoods,* 30 F.3d at 344;

---

1. Section 1962(c) provides:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or partici-

pate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c)

*R.C.M.,* 1997 WL 27059 at *7. Accordingly, Defendant Blum is also dismissed. *Riverwoods,* 30 F.3d at 344–45.

### b. Manage or Operate Enterprise

■ Assuming, however that all the Defendants combined to form a separate enterprise from the accounting firm,[2] the Court finds that the Accounting Defendants did not manage or operate this alleged RICO enterprise. *See, e.g., Reves v. Ernst & Young,* 507 U.S. 170, 188, 113 S.Ct. 1163, 1174–75, 122 L.Ed.2d 525 (1993); *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521–22 (2d Cir.1994); *Department of Econ. Dev. v. Arthur Andersen & Co.,* 924 F.Supp. 449, 468–69 (S.D.N.Y. 1996) (accountants fraudulent certification of misleading financial statements in aid of corporation's securities fraud does not constitute participation in operation and management of enterprise for purposes of assessing RICO liability); *131 Main St. Assocs. v. Manko,* 897 F.Supp. 1507, 1527 (S.D.N.Y.1995); *Amalgamated Bank of N.Y. v. Marsh,* 823 F.Supp. 209, 220 (S.D.N.Y.1993); *United States v. Altman,* 820 F.Supp. 794, 796 (S.D.N.Y.1993); *Strong & Fisher Ltd. v. Maxima Leather, Inc.,* No. 91 Civ. 1779, 1993 WL 277205, at *1 (S.D.N.Y. July 22, 1993).

Section 1962(c) makes it unlawful for any person to "conduct or participate" in the enterprise's affairs. The Supreme Court has found this requires that one participate in the operation or management of the enterprise itself. *Reves,* 507 U.S. at 184–85, 179, 113 S.Ct. at 1172–73, 1170 ("Once we understand the word 'conduct' to require some degree of direction and the word 'participate' to require some part in that direction, the meaning of § 1962(c) comes into focus."); *see also Napoli v. United States,* 45 F.3d 680 (2d Cir.1995), *cert. denied,* 514 U.S. 1084, 115 S.Ct. 1796, 131 L.Ed.2d 724 (1995). The Accounting Defendants did not participate in the conduct of the enterprise's affairs by preparing monthly statements, even if fraudulent, by mailing them to the Plaintiffs, or by mailing fraudulent tax returns. It is well established that professional services by outsiders is insufficient to satisfy the partic-

ipation element of RICO. *Reves,* 507 U.S. at 188, 113 S.Ct. at 1174–75; *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* 955 F.Supp. 248, 253–55 (S.D.N.Y.1997); *Department of Econ. Dev. v. Arthur Andersen & Co.,* 924 F.Supp. 449 (S.D.N.Y.1996); *131 Assocs.,* 897 F.Supp. at 1527; *Marsh,* 823 F.Supp. at 220; *Strong & Fisher,* 1993 WL 277205, at *1. There is also no allegation that the Accountant Defendants had any measure of control over the enterprise's affairs. *Napoli,* 45 F.3d at 683; *Hayden,* 955 F.Supp. 248, 253–55. Nor is there an allegation of how the Accountant Defendants instituted this plan. Nor is there any allegation that the Accountant Defendants performed any acts beyond what they were hired to perform. *Hayden,* 955 F.Supp. 248, 255; *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071 (S.D.N.Y.1996). Therefore, no claim against the Accountant Defendants, alleged in either Cause of Action Four or Five, can survive this requirement. *Reves,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525; *Hayden,* 955 F.Supp. 248.

### c. Rule 9(b)

■ Finally, Plaintiffs' Complaint has failed to allege fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of a person may be averred generally." Fed.R.Civ.P. 9(b). "[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and why they were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993). Here, Plaintiffs' allegations are conclusory. For example, there are no specific citations to the accounting services that were improperly charged to the Partnerships nor to a single invoice containing an improper charge.

---

**2.** Although the Complaint clearly says that Defendant Blum, Tabrisky and Bernstein form an enterprise (Compl.¶ 44), it also states that Defendant Blum and the Partner Defendants "conducted the affairs of *an* enterprise." (Compl. ¶ 51 (emphasis added).)

## 2. *Partner Defendants*

### a. **Pattern of Racketeering Activity**

■ In order to prove a pattern of racketeering activity under RICO, Plaintiffs must show, at least, two[3] related racketeering acts, that occurred in the last ten years, which "amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 237–39, 109 S.Ct. at 2899–2901; *GICC Capital Corp. v. Technology Fin. Group, Inc.*, 67 F.3d 463, 465 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). Relatedness and continuity combine to discern whether a pattern exists. *H.J. Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902–03. Relatedness is defined as "acts that have the same or similar purposes, results, participants, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901.

"'Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902; *GICC,* 67 F.3d at 465–66. Closed-ended continuity may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S at 242, 109 S.Ct. at 2902; *GICC,* 67 F.3d at 466, 467 (citing only two instances where the 2d Circuit has found closed-ended continuity— one for acts occurring over a period of eight years and the other for a two year period.) Acts that extend "over a few weeks or months and threaten[ ] no future criminal conduct [will] not satisfy the requirement [because] Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902; *GICC,* 67 F.3d at 466.

■ Here, the parties proceed under the assumption that closed-ended continuity is alleged.[4] *See GICC,* 67 F.3d at 466. The Court must therefore look to the period of time in which the alleged acts occurred. However, "[i]n determining whether continuity exists the court should not limit its consideration to the duration of the scheme, but should also look at the overall context in which the acts took place," *Pier Connection, Inc. v. Lakhani,* 907 F.Supp. 72, 75 (S.D.N.Y. 1995); *see also United States v. Kaplan,* 886 F.2d 536, 542–43 (2d Cir.1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990), including the number of victims and participants, and the number, variety and extent of the defendant's goals, and whether there are separate schemes. *GICC,* 67 F.3d at 467; *Pier Connection,* 907 F.Supp. at 78.

Plaintiff must show that the Defendants' acts were neither "isolated nor sporadic." *GICC,* 67 F.3d at 467; *see, e.g., Pier Connection,* 907 F.Supp. at 78 ("[T]he Complaint demonstrates that Defendants engaged in one scheme whose single goal was to seize control of [plaintiffs'] business. That Defendants used several different tactics to achieve this goal does not turn Defendants' scheme into one with multiple goals and/or victims, and does not mandate a finding of continuity sufficient to support a RICO claim."); *Mathon,* 875 F.Supp. at 998 ("this case involves a single transaction involving one alleged victim, albeit two persons, one real estate transaction, a limited goal, no threatened future action, and no allegation of long-term criminal conduct"); *Mead v. Schaub,* 757 F.Supp. 319, 323 (S.D.N.Y.1991) ("A critical factor in determining whether the predicates are 'continuing' under RICO is the terminable quality of the goal or purpose of the enterprise.").

The Partner Defendants argue that Plaintiffs' RICO claim should be dismissed because Plaintiffs have failed to allege a closed-ended pattern of racketeering activity. The Court agrees.

---

**3.** While two acts are necessary, they may be insufficient. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 ("Indeed, in common parlance two of anything does not generally form a 'pattern'".).

**4.** The only argument Plaintiffs could advance to argue for opened-ended continuity is that with-

out the discovery of Defendants' alleged acts and the filing of this lawsuit, their allegedly illegal acts would have continued. However, this argument is speculative and has been rejected. *GICC,* 67 F.3d at 466. Otherwise, the Plaintiffs' Complaint does not allege that the unlawful activity is threatened to continue in the future.

Plaintiffs allege in their fifth cause of action, that, from 1992 to 1994, the Partner Defendants engaged in a scheme to defraud Plaintiffs by filing four [5] fraudulent tax returns, on behalf of only 41 West and Pater, by intentionally failing to take exemptions on those tax returns. (Compl.¶¶ 33, 47, 56–60.) When mailed, the Plaintiffs claim the Partner Defendants engaged in mail fraud. (Compl.¶ 60–63.) These acts were done for a single wrongful goal—to "defraud Plaintiffs" (Pls.' Mem. Law at 13), by depriving them of post-tax profits. (Compo.¶ 58.) Plaintiffs argue that such conduct was related because there were four acts each with the "same purpose (to defraud plaintiffs), achiev[ing] the same results (defrauding plaintiffs), [with] the same participants (defendants), the same victims (plaintiffs), and utiliz[ing] the same method (mail fraud) .... and they were in furtherance of the same scheme." (Pls.' Mem. of Law at 13.) To establish continuity the Plaintiffs simply state that these three acts occurred over a period of three years. (Pls.' Mem. of Law at 13.)

Whereas the Plaintiffs' allegations may establish that the acts were related; they do not survive the continuity requirement.[6] Although continuity is "centrally a temporal concept," *GICC*, 67 F.3d at 468; *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902, courts may also analyze other factors to determine whether the acts were isolated and sporadic. *See supra.* The four acts at issue here appear to be annual mailings of allegedly fraudulent tax returns. Although courts have found periods of time shorter than three years to be sufficient to satisfy the continuity requirement, those cases did not address singular, annual acts.[7] The Court finds that

Plaintiffs' allegations do not suffice to fulfill the continuity requirement.

Even if the fact that the acts occurred over a three-year period would suffice to fulfill a temporal requirement, more is required to satisfy the continuity factor. The Plaintiff must allege facts that show the Court that the acts were neither sporadic nor isolated. First, although two acts are necessary they are per se not sufficient to show a pattern. *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. "Section 1961(5) concerns only the minimum number of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J. Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900. After all, by the term itself, a pattern requires more than two acts. *Id.* Committing two "widely separated and isolated criminal offenses" does not subject a person to RICO. *Id.* at 239, 109 S.Ct. at 2900–01. Here, there were only four acts which occurred over a three year period. An average of one act per year is a sporadic event. Furthermore, there is nothing more than a single alleged scheme with a single, wrongful, narrow goal where only some of the Plaintiffs were the victims, where no future activity is threatened, and where the damages are unclear. This narrow class of alleged victims is not the kind of broad-based unlawful activity that RICO was design to address. *Pier Connection*, 907 F.Supp. at 78 (RICO complaint dismissed where plaintiffs made no allegation that defendants "pursued a similar scheme against other ... industry competitors."). Furthermore, although it is not necessary to allege multiple schemes, a court is still permitted to consider the number of schemes in order to ensure that the

---

5. The Complaint is once again devoid of any detail on this issue. Although it alleges four filings it does not give dates. Accordingly, the Court will infer that the returns were filed annually and in one case semi-annually.

6. By examining this aspect of RICO first, the Court has not judged the prima facie showing by Plaintiffs on the other elements of RICO, including the sufficiency of the predicate acts.

7. *GICC*, 67 F.3d at 467 (eleven month scheme involving only a handful of participants, few vic-

tims and general allegations of injury not enough to allege RICO); *Metromedia v. Fugazy*, 983 F.2d 350, 368–69 (2d Cir.1992) (court upheld jury instructions charging that the acts must be repeated over a substantial period of time—weeks or months, as harmless in light of the fact that the acts occurred over at least a two year period, acts included bankruptcy, mail, wire and securities fraud), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *Jacobson v. Cooper*, 882 F.2d 717 (2d Cir.1989) (several instances of wire and mail fraud, extortion, usury, larceny,

alleged activity is not sporadic. *GICC*, 67 F.3d at 467. Here, there was only one. The Court finds that the activities alleged by Plaintiffs are not the type of substantial and continuous activities that RICO was meant to prevent.

■ As far as either Cause of Action Four or Five can be said to allege a cause of action pursuant to 18 U.S.C. § 1962(d), although Plaintiffs never even cite § 1962(d), it is also dismissed as to both sets of Defendants.[8]

### B. Plaintiffs' Request to Amend the Complaint

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that "leave [to amend a pleading] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *See also Mathon*, 875 F.Supp. at 1002 (citations omitted). However, if there is a threat of undue delay, bad faith, futility or prejudice to defendants, leave to amend may be denied. *Mathon*, 875 F.Supp. at 1002 (citations omitted).

Plaintiffs submit a 24–page affidavit,[9] filed in the ongoing actions before Justice Gammerman, which they claim, without explanation, shows they can properly replead the deficiencies of the Complaint. (Pls.' Mem. Law at 25.) The Court finds that repleading would be futile in this case. Nevertheless, should they choose so to do, Plaintiffs are given the opportunity to replead, within 20 days of the date of this Order. Plaintiffs must also submit, at the same time, a re-

sponse to the attached RICO Statement. No extensions of time will be granted. Plaintiffs are advised to consider the applicability of Rule 11 to any further pleadings alleging RICO claims. Defendants are to answer or move within 20 days of the service of the Amended Complaint, if any.

### C. State Law Claims

■ The Court having dismissed all claims over which it had jurisdiction, now dismisses the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

The Court must determine whether it is appropriate to retain the remaining state law claims under supplemental jurisdiction. Section 1367(a) states in pertinent part:

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(c) provides, however, four exceptions to the rule. A district court may decline to exercise jurisdiction if

> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

and offering false instruments for filing, over a period of eight years).

**8.** In order to state a claim under 18 U.S.C. § 1962(d) for a RICO conspiracy, Plaintiffs must prove that the Defendants " 'embraced the objective of the alleged conspiracy,' and agreed to commit two predicate acts in furtherance thereof." *United States v. Viola*, 35 F.3d 37, 43 (2d Cir.1994) (quoting *United States v. Neapolitan*, 791 F.2d 489, 495 (7th Cir.1986), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986)), *cert. denied*, 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Hecht*, 897 F.2d at 25; *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F.Supp. 248, 255 (S.D.N.Y.1997). Here, Plaintiffs have cited to no evidence of any agreement to commit a pattern of predicate racketeering acts. At most Plaintiffs allege that the Accountant Defendants allowed Green and Waxman to list Nanbar and Philrae's corporate of-

fices with the Department of State at the Accountant Defendants' offices outside of New York City, notwithstanding the fact that Nanbar and Philrae's only business was the receipt of income from activities of the Partnerships in New York City and that the Accountant Defendants prepared and filed inaccurate UBT returns. These allegations alone cannot establish liability for a RICO conspiracy. Plaintiffs fail to allege the most basic factors, including an agreement by the Defendants to commit certain predicate acts. Furthermore, because the Court has found that a pattern has not been established, there can be no conspiracy to engage in acts that do not, as a matter of law, constitute a pattern of racketeering activity, in both causes of action four and five.

**9.** There is not one specific reference to the affidavit and its attachments by Plaintiffs to guide the Court to determine their claim that their instant Complaint is amendable.

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The decision to dismiss state law claims is left to the sound discretion of the district judge. *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). Furthermore, when claims are dismissed before trial, the balance of factors will tilt towards declining to exercise jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("If the federal claims are dismissed before trial ... the state claims should be dismissed as well"); *Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993); *Litwin v. American Express Co.,* 838 F.Supp. 855, 857 (S.D.N.Y.1993). Because all the federal claims have been dismissed at a preliminary stage, no reason remains to exercise supplemental jurisdiction over the alleged state law claims. Hence, they are hereby dismissed.[10]

### III. CONCLUSION

Defendants' motions to dismiss Plaintiffs' Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure are GRANTED. Plaintiffs may replead, provided they do so within 20 days and file the attached RICO Statement. Sanctions will be imposed for any submissions filed in violation of Rule 11.

SO ORDERED.

---

10. In light of the Court's decision, it will not address Partner Defendants' motion to stay.