**Michael WATRAL, Plaintiff–Appellant,**

v.

**SILVERNAILS FARM LLC, Silvernails Bloodstock LLC, Michael Tobin, Dennis Brida, and Dennis Brida Racing Stables, Inc., Defendants–Appellees.**

**Docket No. 02–7014.**

United States Court of Appeals, Second Circuit.

Nov. 21, 2002.

Paul A. Batista, New York, NY, (Kim P. Bonstrom, Karen A. Murphy, Bonstrom & Murphy, New York, NY, on the brief), for Plaintiff–Appellant.

Peter Walker, (Leonardo Colonna, on the brief) Seyfarth, Shaw, New York, NY, for Defendants–Appellees, Silvernails Farms, LLC and Silvernails Bloodstock, LLC.

William A. Rome, Hoffman, Pollok & Pickholz, LLP, New York, NY, for Defendant–Appellee, Michael Tobin.

Joel M. Markowitz, Lamb & Barnosky, LLP, Melville, NY, for Defendants–Appellees, Dennis Brida and Dennis Brida Racing Stables, Inc.

Present OAKES, MINER, and KATZMANN, Circuit Judges.

### Summary Order

UPON DUE CONSIDERATION of this appeal from the United States District Court for the Eastern District of New York (Wexler, Leonard D., *J.*), it is hereby

**ORDERED, ADJUDGED AND DECREED** that the judgment of the District Court is **AFFIRMED.**

Plaintiff Michael Watral ("Watral"), the owner of a number of race horses and breeding stock, appeals the district court's dismissal of his RICO action based on an alleged scheme by the defendants to steal the breeding rights to his horses. The district court dismissed plaintiff's RICO claim because it failed to allege racketeering activity that was sufficiently continuous to establish a RICO violation. We affirm for substantially the same reasons cited in the district court's opinion.

We review the district court's dismissal of Watral's claims *de novo,* assuming that the facts he alleges are true and construing all reasonable inferences in his favor. *See Conboy v. AT & T Corp.,* 241 F.3d 242, 246 (2d Cir.2001). In the early 1980's, Watral retained Defendant Dennis Brida ("Brida") to train his horses. In June 1999, Brida transferred the horses to the care and custody of Silvernails Farm, LLC and Silvernails Bloodstock, LLC (the "Silvernails defendants"), which own a horse farm in New York. Watral claims that this transfer was made as part of a scheme to steal the breeding rights to those horses. Watral terminated Brida in or about September 1999. Brida then filed suit in state court against Watral, claiming that he was not paid "management" fees.

Beginning in or about August 2000, Watral requested from the Silvernails defendants an accounting of mares bred to his horses and breeding fees. Watral alleges that the breeding information submitted by the Silvernails defendants was inconsistent and incomplete. The Silvernails defendants allegedly refused to clarify these inconsistencies and refused to turn over other contracts and documents. The horses remained with the Silvernails defendants until November 2000.

On July 3, 2001, Watral filed an order to show cause, pursuant to Fed.R.Civ.P. 64, in the United States District Court for the Eastern District of New York (Wexler, Leonard D., *J.*) seeking seizure of relevant breeding contracts. The Silvernails defendants replied that the plaintiff owed them money and that they would voluntarily surrender the records. The district court denied Watral's request to seize the breeding contracts and referred the case to a magistrate judge for expedited discovery. Several days after a discovery order was issued, the defendants asked permission to file a motion to dismiss Watral's complaint. After some discovery in the case, on September 25, 2001, the district court granted the defendants permission to file a motion to dismiss, stayed further discovery pending briefing and adjudication of the motion, and also permitted Watral to amend his complaint. The district court granted the defendants' motion to dismiss because the amended complaint failed to allege sufficiently continuous racketeering activity to support a RICO claim.

Pursuant to 18 U.S.C. § 1962(c), it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pat-

tern of racketeering activity." To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999).

A "pattern of racketeering activity" must involve at least two predicate acts of racketeering activity committed in a ten-year period. 18 U.S.C. § 1961(5). Moreover, for there to be a pattern of racketeering activity, the predicate acts of racketeering activity must be related and exhibit continuity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239–40, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 97 (2d Cir. 1997). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.,* 492 U.S. at 240 (internal quotations marks omitted); *Schlaifer Nance & Co.,* 119 F.3d at 97.

" 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241 (citation omitted). Watral argues that the amended complaint alleges both closed-ended and open-ended continuity.

■ Watral's amended complaint does not sufficiently allege closed-ended continuity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.,* 492 U.S. at 242. While there is no bright-line test for determining what is a substantial amount of time, *Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992), since the Supreme Court decided *H.J. Inc.,* we generally have held that at a minimum, the plaintiff must show that the predicate acts extended over at least two years to establish closed-ended continuity. *See De Falco v. Bernas,* 244 F.3d 286, 321 (2d Cir.2001); *Cofacredit, S.A.,* 187 F.3d at 242. Moreover, "[a]lthough closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Cofacredit, S.A.,* 187 F.3d at 242.

The alleged scheme by the defendants to defraud the plaintiff of breeding rights did not occur over a substantial period of time. As the district court noted, while Watral alleged that his breeding rights were misappropriated beginning in 1993, this alleged misappropriation occurred when his horses were stabled at a facility different from the Silvernails facility and involved principals who were not named in this action. The district court considered the scheme involving the Silvernails defendants as a discrete scheme for purposes of determining continuity, and Watral does not challenge that assumption in his brief. The district court dates the first predicate act to early 1999, when the Silvernails defendants allegedly entered into an agreement to misappropriate Watral's breeding rights. The horses were actually transferred to the Silvernails defendants in June 1999. Brida was terminated by the plaintiff in September 1999. The horses were removed from the care of the Silvernails Defendants in November 2000, less than two years after the first predicate act

allegedly occurred. The plaintiff then initiated this action by an order to show cause in July 2001, only slightly more than two years after the first alleged predicate act.

Watral argues that the district court erroneously concluded that the alleged racketeering activity ended in September 1999, when Brida was terminated. He submits a laundry list of allegedly fraudulent acts that he claims extended the scheme beyond September 1999. Initially, we note that many of these allegations are conclusory and do not meet the requirements of Fed.R.Civ.P. 9(b), which requires allegations of fraud "to be stated with particularity." At a minimum under Rule 9(b), the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir.1999). Watral's amended complaint is filled with examples of fraud allegations that do not meet this standard.[1] Moreover, even if the amended complaint sufficiently alleged predicate acts extending beyond September 1999, the scheme to steal breeding rights from the plaintiff necessarily ended in November 2000, when the horses were taken from the Silvernails defendants. Furthermore, the alleged length of the scheme is undermined by the fact that this action was initiated in July 2001, only slightly more than two years after the racketeering activity began in the first part of 1999.

Watral attempts to argue that the racketeering activity was continued through false statements made in the litigation process after the order to show cause was filed, but again, many of these allegations are conclusory statements that are not detailed with particularity. The plaintiff basically describes common disagreements between his view of what occurred and the testimony of witnesses who disagree with him. It appears that the defendants' defense to the plaintiff's claim is that they are entitled to breeding rights as compensation for housing his horses and that Brida had the authority to transfer such rights. Regardless of whether this argument ultimately prevails, the defendants' attempt to defend themselves is not so meritless that it qualifies as perjury, fraud, or some other act of racketeering activity. Moreover, the latest of the defendants' allegedly false statements occurred in September 2001, which would only extend the length of the alleged racketeering activity by three months.

Thus, at most, the plaintiff sets forth allegations that barely, if at all, describe a set of predicate acts that extend beyond the bare minimum of two years. We find that in light of the circumstances, the district court did not err in concluding that these allegations do not support a finding of predicate acts occurring over a substantial amount of time. In concluding the scheme alleged does not satisfy the requirements of closed-ended continuity, we also find relevant the fact that the amended complaint only describes one alleged victim and a discrete scheme directed at a particular set of horses. Generally, courts have found that such a discrete and limited scheme aimed at one victim is insufficient to support closed-ended continuity. *See,*

---

1. For example, the amended complaint alleges that the plaintiff mailed him two fraudulent invoices claiming management fees. (Am. Compl. ¶ 67.) But there is no explanation why the plaintiff was not entitled to those fees. The amended complaint claims there were various documents that were "false" and "back-dated" but there is no reference to any specific documents or explanation why such documents were "false." (Am.Compl. ¶ 116(i).)

*e.g., Oak Beverages, Inc. v. Tomra of Mass. LLC,* 96 F.Supp.2d 336, 348 (S.D.N.Y.2000); *Pier Connection, Inc. v. Lakhani,* 907 F.Supp. 72, 78 (S.D.N.Y. 1995); *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 584–85 (S.D.N.Y.1989). While the plaintiff attempts to argue that there were multiple schemes, what he describes are different means towards the same end, the misappropriation of the plaintiff's breeding rights.

The plaintiff also argues that he has established open-ended continuity. When a RICO action is brought before there is long-term criminal conduct that would establish closed-ended continuity, a plaintiff may establish open-ended continuity by showing that there is a threat of continuity. *See H.J. Inc.,* 492 U.S. at 242. The nature of the predicate acts and the nature of the enterprise involved in the predicate acts are relevant in determining whether there is open-ended continuity. *Cofacredit, S.A.,* 187 F.3d at 242. When the enterprise is a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, S.A.,* 187 F.3d at 243 (citations omitted).

■ The defendants in this case operate a stable and train horses. Even assuming that they engaged in wrongful conduct in this one instance, plaintiff does not make sufficient allegations to infer that this was the regular way they operated their business. The scheme alleged in this case has a natural ending point. It involves the alleged misappropriation of a discrete property interest, breeding rights to a number of horses, that is not enough to support a threat of continued criminal activity. While plaintiff alleges that this misappropriation is continuing, the defen-

dants returned the horses to Watral by November 2000. The continuing nature of this dispute is not due to the inherent criminality of the defendants' actions. It is due to a difference in opinion with respect to who owns breeding rights. The plaintiff does not describe a continuing scheme of RICO activity; he describes an ordinary business dispute with respect to the ownership of a particular set of rights.

Finally, the district court properly concluded that because Watral did not allege facts sufficient to support a substantive violation of RICO, the RICO conspiracy claim must also be dismissed.

We affirm the judgment of the district court.