130 F.3d 547
 UNITED STATES of America, Appellant,
v.
Robert TRAPILO, also known as Sealed Deft. 1, Lyle David
Pierce, III, also known as Joe Boy; Regina Pierce, also
known as Sealed Deft. 3, and Wayne Stehlin, also known as
Sealed Deft. # 7, Defendants-Appellees,
Carl Tarbell, also known as Sealed Deft. # 4, also known as
Jake; Patricia Tarbell, also known as Sealed Deft. # 5,
also known as Patty, and Arthur Tarbell, also known as
Sealed Deft. # 6, Defendants.
 No. 111, Docket 97-1011.
 United States Court of Appeals,
Second Circuit.
 Argued Aug. 28, 1997.
Decided Dec. 5, 1997.
 
 Gregory A. West, Assistant United States Attorney, Northern District of New York, Syracuse, N.Y. (Thomas J. Maroney, United States Attorney for the Northern District of New York, Syracuse, NY, of counsel), for Appellant.
 K. Michael Sawicki, Buffalo, NY (Zdarsky, Sawicki & Agostinelli, Buffalo, NY, of counsel), for Appellee Lyle David Pierce, III.
 Marsha A. Hunt, Syracuse, NY, for Appellee Regina Pierce.
 Kevin E. McCormack, Hancock & Estabrook, on the brief, for Appellee Robert Trapilo.
 Before: MESKILL and JACOBS, Circuit Judges, and KORMAN, District Judge.*
 MESKILL, Circuit Judge:
 
 
 1
 This appeal presents the question whether a scheme to defraud the Canadian government of tax revenue is cognizable under the federal wire fraud statute, 18 U.S.C. § 1343. In addressing that issue, the district court adopted the reasoning of the First Circuit in United States v. Boots, 80 F.3d 580 (1st Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 263, 136 L.Ed.2d 188 (1996), and concluded that the common law "revenue rule" and other prudential considerations precluded application of the federal wire fraud statute in alleged schemes to defraud foreign governments of tax revenue. Because we disagree with the reasoning in Boots, we reverse the order of the district court.
 
 BACKGROUND
 
 2
 In recent years, Canada has dramatically raised taxes and duties on the sale of liquor and tobacco products. These tax increases have created a lucrative "black market" for smugglers, who buy liquor and tobacco products in the United States and secretly deliver them into Canada for resale in various Canadian cities.
 
 
 3
 On February 29, 1996, the government filed a one count indictment in the United States District Court for the Northern District of New York, charging Robert Trapilo, Lyle David Pierce, III, Regina Pierce and Wayne Stehlin with a money laundering conspiracy in violation of 18 U.S.C. § 1956(a)(1)-(2) and (h).[1] The indictment alleges that the appellees conspired to engage in a series of financial transactions that involved the proceeds of, and were intended to promote, a scheme to defraud the Canadian government of tax revenue, in violation of the wire fraud statute, 18 U.S.C. § 1343. This "scheme to defraud" constitutes the specified unlawful activity for purposes of the money laundering statute.[2]
 
 
 4
 The conspiracy charge arises out of the appellees' alleged participation in a smuggling organization that operated within the St. Regis Mohawk Indian Reservation in upstate New York. The reservation, consisting of a five mile strip of land straddling the international border between the state of New York and the Canadian provinces of Quebec and Ontario, allegedly served as the conspiracy's hub for the delivery of tax free liquor into Canada.
 
 
 5
 The appellees are alleged to have ordered large shipments of liquor products through interstate telephone calls, facsimiles, and wire transmissions, and are believed to have stored these products in warehouses on the reservation. On various occasions, the appellees and those acting in concert with them, are alleged to have then transported the liquor across the St. Lawrence River and into Canada, avoiding Canadian customs. Other participants are then believed to have delivered the products to black marketeers operating in such cities as Montreal and Toronto.
 
 
 6
 The indictment alleges that Canadian currency generated by the black market liquor sales was thereafter transported back into the United States where it was exchanged and/or deposited to purchase bank drafts or wire transfers. These funds were then used to pay for additional goods, thereby promoting the scheme to defraud the Canadian government of tax revenue.
 
 
 7
 On July 3, 1996, the appellees moved to dismiss the indictment, arguing that in accordance with Boots the government did not have the authority to prosecute wire fraud aimed at defrauding a foreign government of tax or customs revenue.[3] In Boots, three defendants were convicted of conspiracy to violate the federal wire fraud statute, among other things, in connection with a scheme to transport tobacco into Canada without paying Canadian taxes and excise duties. See Boots, 80 F.3d at 583-85. On appeal, the First Circuit reversed the convictions, holding that a scheme to defraud the Canadian government of tax revenue is beyond the reach of the wire fraud statute. Specifically, the court concluded that for purposes of the wire fraud statute, it could not determine whether the defendants had the requisite intent to defraud without first assessing the validity of foreign revenue law. Id. at 587-88. As the court reasoned, its authority to assess the validity of foreign revenue law was precluded by the common law revenue rule, which holds that our courts will normally not enforce foreign tax judgments,[4] the rationale for which is that issues of foreign relations are assigned to, and better handled by, the legislative and executive branches of the government. Because it was foreclosed from passing on the validity of foreign revenue law, the court could not determine whether the defendants had violated the wire fraud statute. Id.
 
 
 8
 The Boots Court also noted that aside from revenue rule considerations, a decision upholding the convictions under the wire fraud statute could license the prosecution of persons who use the wires of the United States to engage in smuggling schemes, even though the federal statute that specifically criminalizes the smuggling of goods into a foreign country punishes such conduct only if that foreign country has a reciprocal law. Id. at 588 (citing 18 U.S.C. § 546.)[5]
 
 
 9
 On December 20, 1996, the district court issued its Memorandum-Decision and Order, granting the appellees' motion to dismiss. The district court, relying on Boots, concluded that the defendants could not be convicted of money laundering conspiracy because it could not determine whether the defendants had the requisite fraudulent intent to sustain the underlying unlawful activity of wire fraud. Specifically, the district court concluded that it could not determine whether the defendants had the requisite intent to defraud without first passing on the validity of foreign revenue law, and stated "[i]f the law [the defendants] intended to violate was not valid, the defendants could not have had [the requisite] criminal intent [to defraud]." Because the court reasoned that, in accordance with Boots, the common law revenue rule precluded inquiry into the validity of foreign revenue laws, the indictment could not be sustained.
 
 
 10
 On appeal, the government contends that the district court erred in dismissing the indictment. Specifically, the government asserts that contrary to the conclusion of the Boots Court and the court below, the wire fraud statute condemns any scheme to defraud where interstate or foreign telecommunications systems are used, and does not require the court to determine the validity of Canadian tax law prior to finding a violation of the statute. In this regard, the government avers that because the essence of any scheme to defraud is a defendant's fraudulent intent, the appellees are not exempt from the strictures of the wire fraud statute simply because the object of the scheme involved defrauding a foreign government of tax revenue. We agree.
 
 DISCUSSION
 
 11
 "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a Court in departing from the plain meaning of words ... in search of an intention which the words themselves did not suggest." United States v. Wiltberger, 18 U.S. 76, 95-96, 5 L.Ed. 37 (1820) (Marshall, C.J.).
 
 
 12
 The wire fraud statute provides, in pertinent part:
 
 
 13
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire ... communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.
 
 
 14
 18 U.S.C. § 1343. The language of the statute unambiguously prohibits the use of interstate or foreign communication systems by anyone who "intend[s] to devise any scheme or artifice to defraud." Id. (emphasis added); United States v. DeFiore, 720 F.2d 757, 761 (2d Cir.1983), cert. denied, 466 U.S. 906, 104 S.Ct. 1684, 80 L.Ed.2d 158 (1984). The statute is limited in scope to the protection of money or property rights. McNally v. United States, 483 U.S. 350, 359-60, 107 S.Ct. 2875, 2880-81, 97 L.Ed.2d 292 (1987).[6] The statute neither expressly, nor impliedly, precludes the prosecution of a scheme to defraud a foreign government of tax revenue, and the common law revenue rule, inapplicable to the instant case, provides no justification for departing from the plain meaning of the statute.
 
 
 15
 Under both the mail fraud and wire fraud statutes,[7] "[t]he thing which is condemned is (1) the forming of the scheme to defraud, however and in whatever form it may take, and (2) a use of [mail and wire communications] in its furtherance. If that is satisfied, more is not required." Gregory v. United States, 253 F.2d 104, 109 (5th Cir.1958) (emphasis omitted); accord United States v. Eskow, 422 F.2d 1060, 1064 (2d Cir.), cert. denied, 398 U.S. 959, 90 S.Ct. 2174, 26 L.Ed.2d 544 (1970); United States v. Fromen, 265 F.2d 702, 705 (2d Cir.), cert. denied, 360 U.S. 909, 79 S.Ct. 1295, 3 L.Ed.2d 1260 (1959). In the past, we have concluded that the wire fraud statute was applicable to a scheme to defraud the State of New York of cigarette taxes, stating that its focus "is upon the misuse of the wires, not the regulation of state affairs." DeFiore, 720 F.2d at 761. We have also upheld a conviction under the mail fraud statute where the evidence demonstrated that the defendant intended to defraud the State of New York of tax revenue, but failed to prove that any taxes were actually due. United States v. Helmsley, 941 F.2d 71, 94 (2d Cir.1991) ("Section 1341 punishes the scheme, not its success."), cert. denied, 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992); see also Durland v. United States, 161 U.S. 306, 313, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896) (for purposes of the statute, the "significant fact is the intent and purpose"). These cases teach, as the statute plainly states, what is proscribed is use of the telecommunication systems of the United States in furtherance of a scheme whereby one intends to defraud another of property. Nothing more is required. The identity and location of the victim, and the success of the scheme, are irrelevant.[8]
 
 
 16
 The statute reaches any scheme to defraud involving money or property, whether the scheme seeks to undermine a sovereign's right to impose taxes, or involves foreign victims and governments. See United States v. Porcelli, 865 F.2d 1352, 1358 (2d Cir.) (scheme involved defrauding New York state of state sales taxes), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); Helmsley, 941 F.2d at 94 (scheme involved intent to defraud New York state of income taxes); see also United States v. Gilboe, 684 F.2d 235, 237-38 (2d Cir.1982) (scheme involved defrauding Chinese government, where the telecommunication systems of the United States were used in transferring certain Chinese payments from a New York bank to a Bahamas bank), cert. denied, 459 U.S. 1201, 103 S.Ct. 1185, 75 L.Ed.2d 432 (1983); United States v. Goldberg, 830 F.2d 459, 464 (3d Cir.1987) (indictment for wire fraud authorized where scheme involved wire communications between Pennsylvania and Canada).
 
 
 17
 At the heart of this indictment is the misuse of the wires in furtherance of a scheme to defraud the Canadian government of tax revenue, not the validity of a foreign sovereign's revenue laws. See, e.g., DeFiore, 720 F.2d at 761-62. The statute condemns the intent to defraud, that is, "the forming of the scheme to defraud, however and in whatever form it may take." Gregory, 253 F.2d at 109. The intent to defraud does not hinge on whether or not the appellees were successful in violating Canadian revenue law, as "[s]ection 1341 punishes the scheme, not its success." Helmsley, 941 F.2d at 94.[9] Consequently, there is no obligation to pass on the validity of Canadian revenue law, and the common law revenue rule is not properly implicated.
 
 
 18
 The simple fact that the scheme to defraud involves a foreign sovereign's revenue laws does not draw our inquiry into forbidden waters reserved exclusively to the legislative and the executive branches of our government. We concern ourselves only with what has been expressly forbidden by statute--the use of the wires in the scheme to defraud. Whether our decision today indirectly assists our Canadian neighbors in keeping smugglers at bay or assists them in the collection of taxes, is not our Court's concern. Therefore, the presence or absence of reciprocal smuggling laws is irrelevant. Our goal is simply to vindicate the intended purpose of the statute, that is, "to prevent the use of [our telecommunication systems] in furtherance of fraudulent enterprises." United States v. Von Barta, 635 F.2d 999, 1005 (2d Cir.1980), cert. denied, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981) (citations omitted).
 
 CONCLUSION
 
 19
 We therefore hold that a scheme to defraud the Canadian government of tax revenue is cognizable under the federal wire fraud statute, 18 U.S.C. § 1343, and reverse the order of the district court that dismissed the indictment alleging a money-laundering conspiracy in violation of 18 U.S.C. § 1956 and remand to the district court for further proceedings.
 
 
 
 *
 Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 Section 1956, Laundering of monetary instruments, provides, in pertinent part:
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 (A)(i) with the intent to promote the carrying on of specified unlawful activity;
 ...
 ....
 shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.
 (2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--
 (A) with the intent to promote the carrying on of specified unlawful activity; ...
 ....
 (h) Any person who conspires to commit any offense defined in this section ... shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.
 18 U.S.C. § 1956.
 
 
 [2]
 Section 1956(c)(7)(A) defines "specified unlawful activity" as including "any act or activity constituting an offense listed in section 1961(1) of this title (with exceptions not pertinent here)." 18 U.S.C. § 1956(c)(7)(A). Wire fraud is among the offenses listed in § 1961(1)
 
 
 [3]
 The appellees also argued that the simple act of smuggling, without an allegation of misrepresentation or deceit, does not satisfy the requirements for a scheme to defraud under the wire fraud statute. Because the district court did not address this argument, the appellees assert it here as an additional ground for affirmance. We conclude that this argument has no merit. The term "scheme to defraud" is measured by a " 'nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society.' " United States v. Von Barta, 635 F.2d 999, 1005 n. 12 (2d Cir.1980) (quoting Gregory v. United States, 253 F.2d 104, 109 (5th Cir.1958)), cert. denied, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); accord United States v. Ragosta, 970 F.2d 1085, 1090 (2d Cir.), cert. denied, 506 U.S. 1002, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992). "The scheme exists although no misrepresentation of fact is made." Gregory, 253 F.2d at 109 (citation and internal quotation marks omitted); accord United States v. Richman, 944 F.2d 323, 331-32 (7th Cir.1991); McEvoy Travel Bureau v. Heritage Travel, 904 F.2d 786, 791 (1st Cir.), cert. denied, 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990). Because the act of smuggling violates fundamental notions of honesty, fair play and right dealing, it is an act within the meaning of a "scheme to defraud."
 
 
 [4]
 "The rationale of the revenue rule has been said to be that revenue laws are positive rather than moral law; they directly affect the public order of another country and hence should not be subject to judicial scrutiny by American courts: for our courts effectively to pass on such laws raises issues of foreign relations which are assigned to and better handled by the legislative and executive branches of government." Boots, 80 F.3d at 587; see also Her Majesty the Queen v. Gilbertson, 433 F.Supp. 410, 411 (D.Or.1977), aff'd, 597 F.2d 1161 (9th Cir.1979). But cf. Restatement (Third) of the Foreign Relations Law of the United States § 483, Reporters Note 2 at 613 (1987) ("In an age when virtually all states impose and collect taxes and when instantaneous transfer of assets can be easily arranged, the rationale for not recognizing or enforcing tax judgments is largely obsolete.")
 
 
 [5]
 Section 546, smuggling goods into foreign countries, provides, in pertinent part:
 Any person owning in whole or in part any vessel of the United States who employs ... such vessel for the purpose of smuggling ... any merchandise into the territory of any foreign government in violation of the laws there in force, [and] if under the laws of such foreign government any penalty or forfeiture is provided for violation of the laws of the United States respecting the customs revenue ... [then that person] shall be fined under this title or imprisoned not more than two years, or both.
 18 U.S.C. § 546.
 
 
 [6]
 Congress overruled the holding in McNally when it enacted 18 U.S.C. § 1346, which provides "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."
 
 
 [7]
 The wire fraud statute, 18 U.S.C. § 1343, is the "lineal descendant" of the mail fraud statute, 18 U.S.C. § 1341. McNally v. United States, 483 U.S. 350, 374, 107 S.Ct. 2875, 2889, 97 L.Ed.2d 292 (1987) (citation and internal quotation marks omitted). "Because these statutes use the same relevant language, they are analyzed in the same way." United States v. Slevin, 106 F.3d 1086, 1088 (2d Cir.1996); see also Von Barta, 635 F.2d at 1005 n. 11 ("scheme or artifice to defraud" language in both mail and wire fraud statutes is construed uniformly)
 
 
 [8]
 The appellees also argue that the Rule of Lenity provides an additional reason for affirmance. We conclude that the Rule of Lenity is not applicable to this case. That rule provides that where there is a "grievous ambiguity or uncertainty in the language and structure [of a statute]," Chapman v. United States, 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991) (citation and internal quotation marks omitted), such that "there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language," McNally v. United States, 483 U.S. 350, 359-60, 107 S.Ct. 2875, 2880-81, 97 L.Ed.2d 292 (1987). A statute does not become ambiguous merely because "[it] has been applied in situations not expressly anticipated by Congress." National Organization For Women v. Scheidler, 510 U.S. 249, 262, 114 S.Ct. 798, 805, 127 L.Ed.2d 99 (1994) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (internal quotation marks omitted)). Here, there is no "grievous ambiguity or uncertainty" in the wire fraud statute whereby one could rationally read its language to exclude schemes to defraud foreign governments of tax revenue. The statute explicitly covers "any scheme to defraud," and expressly covers frauds involving foreign transactions
 
 
 [9]
 Our holding today is not only fully consistent with the plain meaning of the wire fraud statute and decades of jurisprudence developed thereunder, but it is also consistent with the law of conspiracy. Where, as here, an indictment alleges conspiracy, legal impossibility affords a conspirator no defense. United States v. Feola, 420 U.S. 671, 693, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975). "[T]he crime of conspiracy is complete upon the agreement to violate the law, as implemented by one or more overt acts ..., and is not at all dependent upon the ultimate success or failure of the planned scheme." United States v. Everett, 692 F.2d 596, 600 (9th Cir.1982) (citation and internal quotation marks omitted), cert. denied, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). "[T]he impossibility that the defendants' conduct would result in consummation of the contemplated substantive crime is not persuasive or controlling." United States v. Meyers, 529 F.2d 1033, 1037 (7th Cir.), cert. denied, 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176 (1976)