**David SCHNELL, Plaintiff,**

v.

**CONSECO, INC. and Sands Brothers & Co., Ltd., Defendants.**

**No. 98 Civ. 2527.**

United States District Court, S.D. New York.

March 31, 1999.

Jill Rosell, Lowey Dannenberg Bemporad & Selinger, White Plains, NY, for plaintiff.

Walter C. Carlson, Sidney & Austin, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiff David Schnell brings this action against Conseco, Inc. ("Conseco") and Sands Brothers & Co., Ltd. ("Sands"), on behalf of a purported class of public investors in NAL Financial Group, Inc. ("NALF") for injuries suffered as a result of Conseco's alleged fraud in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, (Count I), and the manipulation of the market for NALF securities allegedly committed by Sands, in violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities Exchange Commission ("SEC") (Count II). Essentially, Schnell alleges that Conseco, with the assistance of Sands, unlawfully effected a series of transactions—principally the sale of convertible debentures in NALF—to gain control of NALF by acquiring its common stock at artificially low prices to the detriment of its remaining public shareholders.

Defendants now move to dismiss plaintiff's claims against them pursuant to Fed. R.Civ.P. 12(b)(6) and 9(b). For the reasons stated below, defendants' motions are granted.

## BACKGROUND

In deciding a motion pursuant to Rule 12(b), the court is, of course, obligated to construe the pleadings in the plaintiff's favor. *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988). The following facts are accordingly construed.

Conseco is a financial services holding company incorporated under the laws of the state of Indiana and engaged in the development, marketing, and administration of annuity, supplemental health, and individual life insurance products. Sands is an investment banking firm that is also a broker and dealer in securities.

NALF is a Delaware corporation, engaged in the purchase, securitization, and servicing of automobile finance contracts to consumers with high credit risks. Through an insurance subsidiary, NALF provides insurance and insurance-related products to automobile dealers and their customers, and, through a remarketing subsidiary, NALF disposes of some of its repossessed and off-lease vehicles. On March 23, 1998, NALF filed a Chapter 11 petition for bankruptcy. No claims are asserted in this action against NALF.

On April 23, 1996, Beneficial Standard Life Insurance Co. ("BSLIC") and Great American Reserve Insurance Co. ("GARCO"), two Conseco subsidiaries, each acquired $5,000,000 worth of 9% Subordinated Convertible Debentures of NALF. The debentures had a life span of eighteen months, expiring in October 1997, and were convertible at any time into NALF common stock at the lesser of $12.00 per share or 80% of the market price of the stock on the date of conversion. NALF also issued to the subsidiaries warrants to purchase 500,000 restricted shares of NALF common stock at an exercise price of $12.65 per share.

By late 1996, approximately $11 million in NALF debentures with conversion features similar to the Conseco debentures were owned by other investors, including Merrill Lynch, Westminster Capital, and Michael Karp. Millions of dollars in warrants similar to those granted to the Conseco subsidiaries in April 1996 were also issued by NALF to other private investors.

Plaintiff contends that the debentures gave Conseco an incentive to artificially depress the price of NALF's stock at the end of the eighteen month conversion period so that Conseco could acquire the shares at the depressed price. In connection with Conseco's purchase of the debentures, Conseco was also allowed to designate one director to NALF's Board of Directors. Plaintiff claims that NALF's May 2, 1996 mailing of a proxy statement to its public stockholders and its electronic filing with the SEC was a result of Conseco's designation of a director to NALF's Board and was in furtherance of Conseco's scheme to defraud.

Plaintiff alleges that through phone calls to investors and dissemination of false opinions on the value of NALF stock, Sands, who has acted as Conseco's investment banker, artificially inflated the price of NALF stock through an illegal "pump and dump" scheme to enable Sands to make increased profits on sales of NALF stock.[1] Plaintiff also contends that Sands, which acted as Conseco's financial advisor and received a placement fee in connection with the private placement of Conseco debentures, failed to inform public investors that Conseco itself derived substantial benefits from the Conseco debentures and was positioning itself to acquire NALF at 80% of the market price of NALF stock, which Conseco allegedly expected to be severely depressed at the end of the conversion period.

After Conseco's purchase of NALF shares, plaintiff alleges that defendants began to position NALF to be acquired at a sharp discount by Conseco. Plaintiff contends that after selling NALF stock to the public at artificially inflated prices, Sands took NALF stock off its recommended list and stopped its aggressive efforts to market NALF shares, resulting in a precipitous decline in the stock's value.

On June 23, 1997, when NALF common stock was trading below $2 per share, Con-

---

1. The alleged markups were based on a percentage of the purchase price paid by the investors and represented Sands' fees for the transactions.

seco, pursuant to a Credit Agreement, loaned an additional $5,000,000 to NALF secured by a note maturing on December 31, 1997. In connection with this note, NALF issued to Conseco warrants to purchase 275,000 shares of NALF common stock at an exercise price of $.15 per share and agreed to amend the exercise price of the Conseco warrants to $.15 per share from $12.625 and $14.25 per share.

On August 21, 1997, NALF and Conseco entered into an Investment Agreement, and a first amendment to the June 23, 1997 Credit Agreement. In the Investment Agreement, Conseco acquired 5,000,000 shares of NALF stock for $5 million, and purchased all of NALF's outstanding convertible debentures held by third parties other than Conseco. The Investment Agreement also provided that Conseco would not "initiate or cooperate in the initiation of any reorganization or liquidation proceeding with respect to the Company under the Bankruptcy Act" until the date of Closing, which was October 1, 1997.

On October 1, 1997, Conseco converted many of the debentures it owned into NALF common stock, which resulted in Conseco's ownership of 73.6% of the company, and agreed to convert its remaining debentures into NALF common stock once the company had sufficient authorized shares available for issuance upon conversion. In addition, NALF's Board of Directors was increased from four to six members and the number of Conseco designees on the Board was raised from one to four. Conseco also agreed that it would not pursue a cash-out merger of NALF's public shareholders prior to March 23, 1998 without the approval of a majority of the company's minority stockholders, and that it would not pursue a cash-out merger prior to December 23, 1998 without the approval of a majority of disinterested NALF Directors.

Plaintiff alleges that on November 29, 1997, Conseco caused NALF to mail to its shareholders and file electronically with the SEC its November 1997 Proxy.[2] The proxy disclosed that NALF was continuing to experience serious difficulties, and was mailed with an amendment to the Company's Certificate of Incorporation that increased the number of authorized NALF shares from 50,000,000 to 100,000,000, allegedly to allow Conseco to convert its remaining debentures and increase its control to 86%.

On March 23, 1998, NALF filed a Chapter 11 petition for bankruptcy. Plaintiff alleges that Conseco caused the filing of this petition, and that the filing was improperly intended to enable Conseco to acquire NALF without adequate consideration to its public shareholders.

Plaintiff alleges two claims. First, plaintiff asserts a claim against Conseco for violation of RICO on behalf of himself and a purported class of all other persons and their successors in interest who purchased NALF common stock on or after April 25, 1996, and who still own such stock. Second, plaintiff asserts a claim against Sands, for violation of Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder, on behalf of himself and a purported class consisting of purchasers of NALF common stock between April 25, 1996 and August 21, 1997. Both Conseco and Sands move pursuant to Fed.R.Civ.P. Rules 12(b)(6) and 9(b), alleging that the complaint fails to state a claim under RICO or Rule 10b–5.

## DISCUSSION

### I. *Count I—Plaintiff's RICO Allegations*

#### A. *Mail and Wire Fraud*

Conseco's challenges to the complaint's RICO allegations are essentially that they do not adequately allege a scheme to defraud, a pattern of racketeering activity, or

---

**2.** This Court can take judicial notice of documents filed with the SEC on a motion to dismiss. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991).

causation. In relevant part, RICO prohibits

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).[3] A "pattern of racketeering activity" requires at least two acts of racketeering activity within the past ten years. 18 U.S.C. § 1961(5). Mail and wire fraud are included within the definition of "racketeering activity." 18 U.S.C. § 1961(1).

The elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) the use of the mails or wires to further the scheme. *United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996) (citing *United States v. Miller,* 997 F.2d 1010, 1017 (2d Cir.1993)). Allegations of mail and wire fraud must be pleaded with particularity under Fed. R.Civ.P. 9(b). *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992); *A. Terzi Productions, Inc. v. Theatrical Protective Union,* 2 F.Supp.2d 485, 499 (S.D.N.Y. 1998). This means that the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin,* 962 F.2d at 191 (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). "Plaintiffs asserting mail [or wire] fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.*

■ While it is true that mail or wire communications that contain no false information may satisfy the transmission element of the offenses, the mail or wire communications must be "incident to an essential part of the scheme." *Schmuck v. United States,* 489 U.S. 705, 712, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). In other words, in cases in which the communications are not themselves misleading, "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *In re Sumitomo Copper Litigation,* 995 F.Supp. 451, 456 (S.D.N.Y.1998).

■ ■ In this case, plaintiff does not contend that the mail and wire communications that allegedly formed the RICO predicate acts contained false or misleading information. Rather, plaintiff claims that the mails and wires were used in furtherance of the scheme to defraud. Thus, the ability of plaintiff's mail and wire fraud allegations to withstand this motion to dismiss depends first on the adequacy of the plaintiff's pleading of the scheme to defraud.

Plaintiff cites *United States v. Trapilo,* 130 F.3d 547 (2d Cir.1997) in support of his argument that his complaint sufficiently alleges a scheme to defraud. In that case, our Court of Appeals found that smuggling came within the meaning of a "scheme to defraud," stating, "[t]he term 'scheme to defraud' is measured by a ' "nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society." ' " *Trapilo,* 130 F.3d at 550 n. 3 (citing *United States v. Von Barta,* 635 F.2d 999, 1005 n. 12 (2d Cir.1980)) (other citations omitted). As the *A. Terzi Productions, Inc.* court noted, however, *Trapilo* merely "underscor[ed] the accepted notion that a defendant, by his conduct alone, can intend to deceive another and engage in a scheme to defraud, even though the defendant's

---

**3.** While plaintiff's RICO statement states that his RICO claim against Conseco is brought pursuant to 18 U.S.C. §§ 1962(b) and (c), his complaint mentions only § 1962(c). In this case, however, the relevant analysis for both sections is the same.

statements themselves contain no misrepresentations." *A. Terzi Productions, Inc.*, 2 F.Supp.2d at 501. Thus, while smuggling was an inherently dishonest and deceptive act, the conduct challenged in *A. Terzi Productions, Inc.*—coercing plaintiffs into entering a labor agreement through threatening and abusive conduct—was not dishonest or deceptive, and did not constitute a scheme to defraud.[4] *Id.* at 500.

■ In fact, a scheme to defraud "requires 'fraudulent or deceptive means, such as material misrepresentation or concealment.'" *A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F.Supp.2d 485, 499 (S.D.N.Y.1998) (quoting *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F.Supp. 213, 227 (S.D.N.Y.1992), *aff'd*, 99 F.3d 401 (2d Cir.1995)) (other citations omitted). Here, however, plaintiff's complaint contains no allegations that Conseco employed fraudulent or deceptive means. While plaintiff alleges that Conseco moved to acquire a controlling interest by arranging to acquire NALF shares at a discount and attempting to acquire the remaining interest without paying adequate consideration, no fraudulent or deceptive actions are alleged with respect to Conseco. In addition, while plaintiff claims that Conseco caused NALF to file for bankruptcy on

the first day it could contractually do so, this allegation is also insufficient to support the existence of a scheme to defraud.[5] And while plaintiff contends that Conseco's actions were "coercive," coercion alone does not constitute a scheme to defraud. *See, e.g., A Terzi Productions, Inc.*, 2 F.Supp.2d at 500 (allegations of threats and abusive conduct do not constitute scheme to defraud) (citing *Fasulo v. United States*, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443 (1926)).

In essence, the complaint alleges, at most, that from time to time Conseco and NALF voluntarily entered into various contractual agreements. Under those agreements, NALF received large cash infusions from Conseco, and NALF ultimately granted Conseco the express rights to obtain ownership of 86% of NALF's shares. The terms of the agreements in question were disclosed to NALF's shareholders, and Conseco's conduct in acquiring and converting debentures, in increasing its ownership of NALF stock and expanding its presence on NALF's Board of Directors were all acts consistent with the parties' agreements. The agreements expressly delineated Conseco's right to initiate NALF's reorganization in bankruptcy and there are no sufficient allegations in the com-

---

4. The cases cited by plaintiff, in which courts found schemes to defraud where inherently deceptive acts were alleged, are not to the contrary. *See, e.g., General Credit Corp. v. Goldfarb*, No. 98 Civ. 3188(DLC), 1998 WL 851592, *2 (S.D.N.Y. Dec.9, 1998) (finding scheme to defraud where defendants wrote, then disavowed, multiple checks to the congregation with which they were affiliated in attempt to defraud check factoring corporation and Internal Revenue Service; defendants' actions included submission of false affidavits of forged endorsement to the bank); *In re Sumitomo Copper Litigation*, 995 F.Supp. 451, 456–57 (S.D.N.Y.1998) (finding scheme to defraud where defendants acted in concert to manipulate copper prices over period of seven years, restricting available supply of copper, which resulted in copper prices reaching an artificially high level).

5. While plaintiff states in his brief that Conseco's acquisition of NALF was undertaken

without the approval of NALF's board of directors and public shareholders, and that Conseco's causing NALF to file for bankruptcy came without the approval of the non-Conseco members of NALF's board of directors, those allegations appear nowhere in plaintiff's complaint. See *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y.1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). Further, although plaintiff suggests in his RICO statement that the required shareholder approval was not attained, he does so first only generally (RICO Statement, Resp. 2), and then qualifies his belief with the term "suspects." (RICO Statement, Resp. 4). Neither of these statements is sufficiently well-pleaded to support the existence of a scheme to defraud.

plaint that Conseco's actions violated the parties' agreements. However aggressive or self-interested the bargains Conseco struck for itself might have been, the fact remains that there is "nothing deceptive .... about the exercise of an express contractual right." *Samuels v. Old Kent Bank,* No. 96 C 6667, 1997 WL 458434, *9 (N.D.Ill. Aug.1, 1997). Since plaintiff has failed to properly allege a scheme to defraud, his RICO allegations against defendant Conseco must be dismissed.

## B. *Pattern of Racketeering Activity*

Even if plaintiff's mail and wire fraud allegations were sufficient, plaintiff has failed to properly allege a pattern of racketeering activity. In order to plead a pattern of racketeering activity, plaintiff must allege two or more predicate acts by defendant that are sufficiently related and amount to, or pose a threat of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Showing the threat of continued criminal activity requires the allegation of either an "open-ended" (i.e., past criminal conduct with a threat of future criminal conduct) or "closed-ended" (i.e., past criminal activity extending over a substantial period of time) pattern of racketeering activity. *GICC Capital Corp. v. Technology Fin. Group, Inc.,* 67 F.3d 463, 466 (2d Cir.1995).

With respect to an open-ended pattern of racketeering activity, our Circuit has noted:

> in cases in which the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts generally have found no threat of continuing criminal activity arising from conduct that extended over even longer periods.

*United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995). In this case, plaintiff challenges the manner in which Conseco acquired another company, an endeavor that is not inherently unlawful. The predicate acts that plaintiff alleges are the mailings of proxy statements and the making of phone calls that were not in themselves false or deceptive. As Conseco points out, once NALF's bankruptcy petition is confirmed, Conseco's alleged scheme to gain control of NALF at the expense of its public shareholders will end. As such, the allegations in the complaint carry with them no threat of continued or future criminal activity. While plaintiff suggests that the manner in which Conseco acquired NALF is the regular way that Conseco conducts its ongoing business in the sub-prime auto lending industry, plaintiff does not allege that Conseco's acquisition of other companies came as a result of any illegal, much less racketeering activity. As such, plaintiff's speculative allegations regarding Conseco's other acquisitions do not give rise to a threat of future criminal activity. Accordingly, plaintiff's complaint fails to allege an open-ended pattern of racketeering activity.

Whether a closed-ended pattern of racketeering activity exists depends on analysis of a number of non-dispositive factors, including the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes. *GICC Capital Corp.,* 67 F.3d at 467. Our Circuit has been sparing in finding closed-ended continuity. *See id.* (noting that since *H.J. Inc.,* the Second Circuit had found closed-ended continuity only twice). Here, plaintiff alleges that Conseco's racketeering conduct began May 2,

1996, with the mailing of a proxy statement to NALF shareholders, and continued until March 23, 1998, with the filing of the Chapter 11 petition. That period of almost twenty-three months, plaintiff claims, is sufficient to support a finding of closed-ended continuity. *See Metromedia v. Fugazy*, 983 F.2d 350, 369 (2d Cir.1992) (finding two year period sufficient to support closed-ended continuity, stating, "Periods of 19 or 20 months ... have been held sufficient to support a finding of continuity"). While, when taken in isolation, the time period of the alleged racketeering conduct may support a finding of closed-ended continuity, such a finding is not automatic in light of the other factors to be considered. *See Feirstein v. Nanbar Realty Corp.*, 963 F.Supp. 254, 260 (S.D.N.Y. 1997) (finding plaintiffs' allegations insufficient for closed-ended continuity although acts occurred over a three-year period).

Plaintiff's RICO claim alleges a scheme to defraud by a single defendant, Conseco, with the goal of seizing control of NALF at the expense of a single class of victims—NALF's public shareholders. While plaintiff's complaint alleges a number of predicate mail and wire fraud acts in furtherance of this scheme, these acts are in themselves innocuous and are not alleged to be false or misleading in any way. These acts, though allegedly undertaken over a period of 23 months, are insufficient to state a closed-ended pattern of racketeering activity. As the court in *Pier Connection, Inc. v. Lakhani*, 907 F.Supp. 72 (S.D.N.Y.1995) stated, in language equally applicable here,

> the Complaint demonstrates that Defendants engaged in one scheme whose single goal was to seize control of Pier Connection's business. That Defendants used several different tactics to achieve this goal does not turn Defendants' scheme into one with multiple goals and/or victims, and does not mandate a

finding of continuity sufficient to support a RICO claim.

*Id.* at 78. Likewise, in this case, plaintiff alleges that Conseco was engaged in one scheme, with the single goal of seizing control of NALF as cheaply as possible. Despite plaintiff's claims that the predicate acts occurred over a period of twenty-three months, the fact that Conseco allegedly used mail and wire communications that in themselves contained no deceptive or misleading statements to further its single goal does not mandate a finding of closed-ended continuity. Plaintiff's RICO allegations are deficient as a consequence of their failure to state a pattern of racketeering activity.[6]

An additional deficiency in plaintiff's RICO allegations is his failure adequately to allege that his injury was both caused in fact, and proximately caused, by the conduct alleged to constitute the predicate acts under RICO. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990). *Hecht* teaches that an injury is "proximately caused" by a RICO violation if the predicate acts "are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht*, 897 F.2d at 23–24.

Two types of potential injuries are alleged in the complaint. The first is a decline in the NALF share price as a result of defendants' conduct. The second is the anticipated future loss to all common shareholders (including plaintiff and Conseco) when, and if, a reorganization plan is formulated, approved by the creditors, and confirmed by the bankruptcy court. But this latter injury is simply too speculative to meet the causation requirements articulated in *Holmes* and *Hecht* and cannot, therefore, constitute RICO injury. *See,*

---

**6.** As a result of its dismissal of plaintiff's RICO claims, this Court need not address

Conseco's other arguments.

*e.g., First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 767 (2d Cir.1994); *Hecht,* 897 F.2d at 24; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1105–06 (2d Cir.1988).

■ With respect to the first type of injury alleged, although the complaint asserts proximate causation in a conclusory fashion, our Court of Appeals requires that a plaintiff allege loss causation with enough particularity to permit a determination whether the factual basis for a claim, if proven, could support an inference of proximate cause. *First Nationwide Bank,* 27 F.3d at 770. Here, plaintiff's RICO claims contain no facts that, if proven, would establish a nexus between the loss in share price alleged and Conseco's conduct. Even on plaintiff's version of events, NALF's share price dropped because of a fundamental deterioration in NALF's business and the reflection of that fact in its share price. "When factors other than the defendant's fraud are an intervening direct cause of plaintiff's injury, the same injury cannot be said to have occurred by reason of defendant's action." *First Nationwide Bank,* 27 F.3d at 769. *See also Powers v. British Vita, P.L.C.,* 57 F.3d 176, 189 (2d Cir.1995). Thus, in view of plaintiff's failure to allege properly a scheme to defraud, a pattern of racketeering activity, or proximate causation in either his complaint or RICO statement, plaintiff's RICO claims are dismissed with prejudice, and his motion to amend his complaint is denied.

## II. *Count II—Plaintiff's Security Fraud Allegations*

Plaintiff also asserts claims against Sands for the alleged violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the SEC. Section 10(b) prohibits: "any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of [SEC rules]." 15 U.S.C. § 78j(b); *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 471, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

In 1995, Congress passed the Private Securities Litigation Reform Act (the "Reform Act"). In part, the Reform Act imposed a heightened pleading standard for § 10(b) actions that allege misrepresentations and omissions under Rule 10b–5. Thus, § 78u–4(b) of the Reform Act provides:

(b) Requirements for securities fraud actions

(1) Misleading statements and omissions

In any private action arising under this chapter in which the plaintiff alleges that the defendant--

(A) made an untrue state of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the com-

plaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b).

■ Plaintiff contends that the terms of 15 U.S.C. § 78u–4(b) apply only to claims based on misrepresentations and omissions under Rule 10b–5(b) and not those, as here, based on market manipulation. As Sands points out, however, plaintiff's allegations of misconduct by Sands are largely based on misrepresentations and omissions. Specifically, plaintiff alleges that Sands employed the following activities to artificially inflate the price of NALF stock: (1) Sands published and disseminated to investors two Research Reviews that apparently contained a number of misrepresentations (Complaint, ¶ 21); (2) Sands used fictitious investor names to send false opinions on the value of NALF stock to real investors (Complaint, ¶ 20); (3) Sands' brokers made cold calls to unsuspecting investors to solicit sales of NALF stock at the highest price maintainable through Sands' market-making efforts (Complaint, ¶ 20); and (4) Sands failed to inform the public that Conseco, not NALF, obtained the benefit from the Conseco Debentures and that Conseco was positioning itself to acquire NALF (Complaint, ¶ 21(b)). Because the allegations are based on Sands' claimed misrepresentations and omissions, the heightened pleading standard of the 1995 Reform Act applies. *See* 15 U.S.C. § 78u–4(b).

■ Here, plaintiff's complaint is based largely on "information and belief." Consequently, in order to survive a motion to dismiss, plaintiff must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b). Plaintiff's complaint, however, fails to meet that standard, complaining generally of, for example, Sands' "issuance of materially false and misleading Research Reviews," and its "use of the internet to send fictitious messages to potential investors in NALF stock falsely touting NALF stock." (Complaint, ¶ 52.) Such allegations, bereft of any facts on which plaintiff's belief of Sands' miscon-

duct is based, are insufficient to withstand a motion to dismiss.

If plaintiff's claim is considered one for market manipulation, as plaintiff contends it should be, plaintiff must allege (1) damage, (2) caused by reliance on defendants' misrepresentations or omissions of material fact, or on a scheme by the defendants to defraud, (3) scienter, (4) in connection with the purchase or sale of securities, (5) furthered by the defendants' use of the mails or any facility of a national securities exchange. *Dietrich v. Bauer*, No. 95 Civ. 7051(RWS), 1999 WL 126438, *19 (S.D.N.Y. Mar.10, 1999) (citing *Cowen & Co. v. Merriam*, 745 F.Supp. 925, 929 (S.D.N.Y.1990)). Plaintiff has failed to properly plead scienter.

■ A plaintiff may plead scienter by establishing a motive to commit fraud and an opportunity to do so. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995); *Gruntal & Co., Inc. v. San Diego Bancorp*, 901 F.Supp. 607, 613 (S.D.N.Y.1995). Where motive is not apparent, a plaintiff can plead scienter by identifying circumstances indicating conscious fraudulent behavior or recklessness. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir.1994); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (en banc). In such a case, the strength of the circumstantial allegations must be correspondingly greater. *Beck*, 820 F.2d at 50. In assessing a defendant's fraudulent intent, a court must assume that "the defendant is acting in his or her informed economic self-interest." *Laro, Inc. v. Chase Manhattan Bank*, 866 F.Supp. 132, 138 (S.D.N.Y.1994), *aff'd*, 60 F.3d 810 (2d Cir.1995) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). "Scienter can be alleged by conclusory allegations if they are supported by facts giving rise to a strong inference of

fraudulent intent." *In re Blech Securities Litigation,* 961 F.Supp. 569, 579 (S.D.N.Y. 1997).

 Here, plaintiff has not adequately pleaded Sands' motive to commit the. alleged securities fraud. While plaintiff does suggest that Sands artificially inflated the price of NALF stock in order to realize greater transaction fees, these allegations alone cannot show an improper motive. *See, e.g., Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir.1995); *Fisher v. Offerman & Co., Inc.,* No. 95 Civ. 2566(JGK), 1996 WL 563141, *6 (S.D.N.Y. Oct.2, 1996) ("[A]n underwriter's alleged motive to earn its underwriting fees is not alone sufficient to sustain a strong inference of fraudulent intent. If it were, every underwriter, law firm, accountant, and investment advisor whose compensation or commission depended on the completion of an initial public offering would have a motive to commit fraud, which would make Rule 9(b) wholly meaningless."). In addition, other than stating that Sands and Conseco had a close relationship, plaintiff has not otherwise explained Sands' motive in suddenly seeking to depress NALF's stock price to benefit Conseco.

Nor has plaintiff pleaded circumstances indicating conscious misbehavior or recklessness on Sands' part sufficient to withstand this motion to dismiss. Rather, plaintiff cites various optimistic statements and news releases by Sands and holds them against what actually happened to show that Sands had the fraudulent intent necessary to support a claim of securities fraud. These allegations are insufficient. *See Shields,* 25 F.3d at 1129 ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud. We have rejected the legitimacy of 'alleging fraud by hindsight.' ") (quoting *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978)). Accordingly, as plaintiff has not properly pleaded scienter, his market manipulation claim is dismissed.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed. Because plaintiff has filed both a complaint and a RICO statement with respect to its RICO claim against Conseco, plaintiff's claim against Conseco is dismissed without leave to replead. With respect to plaintiff's claim against Sands, this Court is mindful of the fact that plaintiff has not yet had a chance to amend his complaint, and cannot at this point say that any amendment would be futile. Thus, dismissal of plaintiff's claim against Sands is without prejudice. This dismissal becomes "with prejudice" unless an amended complaint is filed within thirty days of the date of this Order.

**SO ORDERED.**