WILKINS, Circuit Judge,
concurring:
I join in the Court’s result and much of its rationale. I agree that SunRise has standing to petition as the alleged victim of Emor’s embezzlement and that SunRise is not estopped from demonstrating its “interest” in the forfeited property based on findings of fact the District Court made before it was entitled to intervene in the proceedings. I write separately due to my concern that Section III.B. of the majority opinion may engender confusion about the scope of wire fraud or criminal forfeiture.
. I agree with the majority that the government is not required to establish the identity of a specific victim in order to prove wire fraud, Maj. Op. at 680 n. 4, as the nine circuits to consider the question have uniformly held. See United States v. Tum, 707 F.3d 68, 75-76 & n. 6 (1st Cir. 2013) (citing cases from the Fourth, Fifth, Seventh, Ninth and Eleventh circuits); see also United States v. McAuliffe, 490 F.3d 526, 533 (6th Cir.2007); United States v. Trapilo, 130 F.3d 547, 552 (2d Cir.1997); United States v. Pelullo, 964 F.2d 193, 216 (3d Cir.1992). As we have held, wire fraud requires proof only of 1) knowing and willful entry into a scheme to defraud and 2) use of an interstate wire communication in furtherance of the scheme. See United States v. Tann, 532 F.3d 868, 872 (D.C.Cir. 2008). Consequently, I disagree with the suggestions throughout the majority opinion that the government needed to identify the victim of the wire fraud in the charging documents, or that the District Court needed to determine whether SunRise, the District of Columbia, or the federal government was the victim of Emor’s fraud at the time of the guilty plea.
Wire fraud comes in many shapes and sizes. One paradigmatic iteration of the offense transpires when the defendant diverts for personal use funds that a donor provided to a nonprofit corporation for a specific purpose. In such cases, the donor/grantor can be properly characterized as the victim even though the defendant took the property directly from the non *683 profit. See, e.g., United States v. Treadwell, 760 F.2d 327, 335-37, 337 n. 17 (D.C.Cir.1985); Post v. United States, 407 F.2d 319, 329 (D.C.Cir.1968); United States v. Kilpatrick, No. 10-20403, 2013 WL 4041866, at *18-19 (E.D.Mich. Aug. 8, 2013). As the majority notes, the diversion of funds could also be characterized as an embezzlement in which the nonprofit organization — here SunRise — is the victim. Maj. Op. at 678.
In this case, the Information and Statement of Offense expressly noted that the District and federal governments were SunRise’s sole sources of funds and that the funds were provided exclusively as reimbursement for special education services, and characterized Emor’s scheme as involving the use of SunRise’s funds “in a manner unrelated to the education of students with disabilities at SunRise.”[1] Superseding Information at 1, 3, United States v. Emor, No. 10-cr-298, 2011 WL 3625378 (D.D.C. July 22, 2011), ECF No. 44; J.A. 69, 71. Thus, slightly differing from the majority, Maj. Op. at 680-81, my reading of the record is that the prosecution and Emor agreed at the time of the guilty plea that the wire fraud scheme involved illegally diverting funds restricted for educational uses to Emor’s personal use; and the parties went forward with the plea with the full understanding that, in subsequent proceedings, the government would argue that the victim of Emor’s fraudulent scheme was the District, while Emor would argue that the victim was SunRise. Transcript of Aug. 3, 2011 at 14-15, Emor (D.D.C. Aug. 3, 2011), ECF No. 59.
Indeed, the government had ample basis to have questions about the role of SunRise in Emor’s scheme. When the gov-
ernment subpoenaed SunRise’s documents related to Core Ventures, SunRise produced only brief, incomplete notes purportedly reflecting two Board of Directors meetings to document its $2 million “loan.” J.A. 232, 237-38. After the guilty plea, the evidence presented at the hearings indicated that SunRise’s Board at relevant times consisted solely of Emor, his college-age son, and a young SunRise employee; that the Board neglected to meet at all during 2008; that it completely failed to document major'activities such as the purported loan to Core Ventures; that it approved hundreds of thousands of dollars in purchases of luxury vehicles, housing, and gifts for Emor and his family members; and that it approved a $500,000 bonus to Emor while he was incarcerated for selling stolen computers. J.A. 214-44. Of course, SunRise will have the opportunity to rebut or explain this evidence on remand, and to show that SunRise was not complicit in Emor’s diversion. Nonetheless, I think it unfair to suggest that the government should have been certain that SunRise was a victim at the time of the guilty plea based on a reasonable assessment of the facts as they would have appeared to the government at that time.
In sum, the District Court can sort out any remaining disputed issues of fact and law on remand, including SunRise’s ability to demonstrate its “legal interest” in the forfeited property and whether it is someone “other than the defendant.” 21 U.S.C. § 853(n)(2).

. Echoing the Internal Revenue Code, SunRise’s articles of incorporation provide that "[n]o part of the net earnings of the corporation shall inure to the benefit of, or be distributable to," its officers. J.A. 183; 26 U.S.C. § 501(c)(3).